BENJAMIN F. BURTON, ALENA A. RICHARDSON, JULIA B. DARBY, MARY L. B. DERRICKSON AND VIRGINIA B. JONES, Administrators d. b. n. c. t. a. of Daniel R. Burton, deceased, and BENJAMIN F. BURTON, ALENA A. RICHARDSON, JULIA B. DARBY, MARY L. B. DERRICKSON AND VIRGINIA B. JONES,

*vs.*

WILBUR MASTEN, HEZEKIAH MASTEN, JOHN H. MASTEN AND DANIEL R. B. MASTEN.

*Sussex, Dec.* 31, 1931.

*Daniel J. Layton* and *Henry Ridgely*, for complainants.

*James M. Tunnell* and *James H. Hughes*, for defendants, the children of Mrs. Masten.

THE CHANCELLOR: The Masten heirs claim the right to be paid the one-fifth share of the residue which their mother would have received if she had survived the testator. This is upon the theory that they stand in her place, not because of any statutory provision (*Section* 3389, *Revised Code* 1915, applies only to wills of persons dying after March 15, 1909), but because of the language of the will and codicil; or, if not, the share of their mother, being in the residue, was undisposed of and devolves as upon intestacy, in which event they, as heirs of the testator, are entitled to receive one-fifth thereof. In other words, they claim first that they are entitled to one-fifth of the residuary sum in hand, or, in the event that their claim is not sustained to that extent, they are entitled at least to a fifth of the fifth. The other parties in interest deny the right of the Masten heirs to any portion of the residue.

This will and codicil were before this court on two other occasions—once in 1894 and again in 1901. The testator died seised in fee of certain lands which he held in common with another. After his death his co-tenant instituted partition proceedings in the Court of Chancery in Kent County in 1894 and in Sussex County in 1901. Sales were ordered and the shares of the parties entitled to the moiety of proceeds under the Burton will and codicil were fixed and decreed. The partition proceedings show that not only were the will and codicil set out in the petitions, but also the facts as to the survivancy of the testator's three

brothers and one sister, and the death during the lifetime of the testator of his sister, Mrs. Masten, leaving her four children as her only heirs, who survived the testator. In the Kent County cause the Chancellor entered a decree fixing the shares and awarding the proceeds of the Burton moiety to the three living brothers and the one living sister, to the exclusion of the children of Mrs. Masten. In the Sussex County cause, which was before a different Chancellor, the same sort of decree was entered.

The heirs of Mrs. Masten, however, were not made parties in those partition causes. Neither did they appear. One of them was in fact a minor. Their solicitors contend that the decrees entered in their absence as parties are not binding upon them. This is of course true. The solicitors for the other parties do not refer to the partition decrees as rendering the question of the rights of the Masten heirs *res adjudicata*. What they do say with respect to the decrees is that it must be assumed that before the Chancellors entered them they must have been of the opinion that the heirs of Mrs. Masten took nothing under the will and codicil, and that this court, if it does not regard the decrees before made as putting the question at rest, should hesitate greatly before rejecting the decisional implications inhering in the decrees and thereby overruling what is tantamount to two prior decisions of this court upon the precise question here at issue. It is further suggested that, while there were no adversary interests represented in the partition cause, yet the solicitors appearing therein were four of the most eminent members of the bar whose learning and ability are everywhere conceded to be of the highest order, and that therefore the decrees are not only to be presumed as expressive of the opinions of the Chancellors, but as well of the able and upright solicitors who aided in their framing.

The solicitors for the Mastens are so earnest, however, in their insistence that the decrees referred to are erroneous, notwithstanding the eminence of the Chancellors who

entered them and the deserved repute of the solicitors who participated in their framing, that I have undertaken to make a careful examination of the briefs and authorities therein cited to satisfy myself upon whether this court should now in effect overrule the prior decisions which inhere in the decrees entered in the partition causes.

The first proposition upon which the solicitors for the Mastens rely is that the will and codicil evidence an intent that the heirs of a brother or sister who predeceased the testator should take the share which their ancestor if living would have taken. The language of the will was "to my brothers and sisters (naming four of the five), to them, their heirs and assigns forever." Had there been no codicil, this language, in the event of the death of a brother or sister in the lifetime of the testator, would undoubtedly result in a lapsing of the deceased one's share. It being a share in the residue of personalty, the lapsed residuary legacy would be treated as intestate property and accordingly go to the testator's next of kin. *Lodge, Ex'r., v. Grubb, et al.,* 15 *Del. Ch.* 105, 132 *A.* 142. If this principle be applicable, then under the will· (disregarding for the moment the codicil) the children of Mrs. Masten would not take her share. The most they would take would be one-fifth of her share as next of kin of the testator, their uncle.

But it is contended in their behalf that the phrase "to them, their heirs and assigns forever" indicates an intent on the part of the testator that in the case of the death of any one of the brothers or sisters, the heirs of the decedent should be substituted, and that therefore the children of Mrs. Masten, so far as the will is concerned, should take not one-fifth of her share but all of it. This contention attaches an erroneous significance to the word "heirs." That word was used not alone with respect to the personal property bequeathed in the residuary clause, with which the instant case is concerned; it was used also with respect to real estate. It was used as a word designating the quantity of interest devised and bequeathed. As applied to personalty it

is not of course a word of art, but it is one frequently met with in connection with personalty especially when both real and personal property are disposed of in one clause. To hold as is contended for by the solicitors for the Mastens, would require that the word "heirs" when used in the will should be taken as a word of purchase. I do not think it is to be so taken. It is a word of limitation. It has been held that a gift to "A. or his heirs" or to "A. or his executors and administrators" will not lapse upon the death of "A." before the testator. In such case the word "or" is taken to indicate an intent to substitute the heirs or executors if A. should not survive; and two courts have given the same interpretation to the expression "and heirs," holding practically that "and" means "or." *Kerrigan v. Tabb,* (*N. J. Ch.*) 39 *A.* 701.; *Huntress v. Place,* 137 *Mass.* 409. The New Jersey case cites no authority in support of its ruling. It is to be noted, however, that the Vice Chancellor who delivered the opinion observes that when the words "and his executors" stands alone, little or no evidence is to be gleaned of a substitute intention—something further must appear in the testamentary language from which such an intention is to be deduced. In the Massachusetts case the court dealt with a gift of a residue to "be equally divided among my brothers and sisters and their heirs." At the time the will was made three brothers and only one sister were living, one sister having died leaving issue. The court, after pronouncing the question of construction a difficult one "inclined to the view" and held, that in the phrase "and their heirs" the word "heirs" was to be taken as a word of purchase and not of limitation and that therefore the issue of the deceased sister participated in the gift. The use of the plural word "sisters" when only one sister was alive was taken to indicate an intention to include the one who had deceased. The issue of the deceased sister should be substituted in her stead, said the court. This result, however, I apprehend was arrived at solely by force of the word "and" in the phrase "and their heirs," as a reading of the authorities

cited by the Massachusetts court in support of its conclusion seems to me to indicate. From the use of the plural "sisters" when only one was alive, in conjunction with the word "and" in the phrase "and their heirs," the court with admitted difficulty concluded that the word "heirs" was to be interpreted as a word of purchase and not of limitation.

The case cited from 137 *Mass.* 409, is the closest in point of principle to the one now before the court. The testator in that case in his will, as in this one in his codicil, used "sisters," when only one was living, to designate his beneficiaries. In this case there were sisters living when the word was used in the will, but only one living when it was again used in the codicil. The analogy between the two cases, however, ends at that point. A distinction between the two is, however, to be noted based on the presence of the word "and" in the Massachusetts case and its absence in the instant one. That word, as before noted, must have been allowed the effect of diverting the testamentary disposition to the heirs as purchasers. The word is absent here. The only time when the heirs of sisters are mentioned is in the will, at which time sisters were living. (The word "heirs" in the codicil refers to the brother, Henry P.) Even if the phrase "and heirs" had been used in the will, the case would be different from the Massachusetts one, for in that event the phrase would be found in conjunction with sisters *in esse,* whereas in the Massachusetts case "sisters" was used in conjunction with only one *in esse.*

The Massachusetts case, therefore, upon which the solicitors for the Mastens place so much reliance, even if it be conceded as correct in principle notwithstanding the court's intimation of difficulty in reaching its conclusion, is distinguishable from the instant one. The case of *Barnett's Appeal,* 104 *Pa.* 342, reaches a contrary conclusion to that reached in Massachusetts, on testamentary language that, it seems to me, would supply less difficulty in support of it than does that which was before the Massachusetts court.

I conclude that the words "to them, their heirs, etc.,"

found in this will are words of limitation and not of purchase.

Looking now to the codicil, its peculiar language, referring as it does to "sisters" can have no greater effect than to repeat by way of implication the residuary bequest and devise given by the will to the brothers and sisters. In other words, it can mean no more at the outside than—to my brothers and sisters, to them, their heirs and assigns forever. This manner of expression is so commonly used to express the limitation of estates as to be stereotyped. It, so far as I know, has never been otherwise regarded. To allow "heirs" in such an expression a significance as a word of purchase, would be to thoroughly unsettle what it seems to me is a rule of construction as well settled in the law as any we can hope to find. I must take it as a word of limitation.

It is contended by the parties adverse to the Masten heirs, that it is hardly legitimate to deduce from the use of the plural form "sisters" in the codicil an intent on the part of the testator to refer to his deceased sister, the suggestion in support of the contention being that the expression "my brothers and sisters" is but the natural manner in which a man would refer to several in the class even though there may be only one therein of either sex. The Massachusetts case before cited is an authority contrary to this contention. If the contention be sound, it would follow that the codicil made no repetition of the gift to Mrs. Masten, and all the argument in behalf of her heirs would fall. It may be that the Chancellors in entering the partition decrees took this view of the matter. We have no way of knowing.

But taking the case most strongly for the Masten heirs, and supposing accordingly that the word "sisters" in the codicil embraced their mother, an assumption upon which the argument of their solicitors has proceeded, we have then at the most, an attempt by the testator in his codicil to give to his sister, then deceased, her heirs and assigns, a share of the residue of his estate. She being dead at the

time, the gift was void. No intent to substitute her heirs can be gathered from the bare circumstance that the testator knew her to be dead at the time he wrote the codicil. *Stiegler v. Hibbert,* 17 *Del. Ch.* 32, 147 *A.* 252.

But the argument which proceeds on the assumption that the will and codicil together are to be taken as a gift to brothers and sisters, has another angle to it. How was it to go to them? Were they to receive it as a class or as *personæ designatæ*? If they took in the latter capacity, then the void share being in the residue of personalty, would go to the testator's next of kin. *Lodge, Ex'r., v. Grubb, et al.,* 15 *Del. Ch.* 105, 132 *A.* 142. If on the other hand, they were to take as a class, the survivors of the class would take the entire residue, the void share going in augmentation of the share of each survivor.

Certainly, looking at the will alone, the brothers and sisters were not to take as a class. This is manifest, if for no other reason, from the fact that he specifically designated four out of five then living. The only countenance that can be given to the idea of a class gift is to be found in the language of the codicil where the testator said "I give * * * to my brother, Henry P. Burton, * * * an equal share with my other brothers and sisters in and to all the remainder and residue of my estate, to him, his heirs and assigns forever." Now should this language be understood, when taken in conjunction with the language of the will, as simply meaning to list Henry by name with the others who were already specifically named in the will as though, taking the will and codicil together, he had said, "to my brothers and sisters, namely, Thomas D. Burton, Benjamin F. Burton, Lydia A. Tomlinson, Sarah R. Masten and Henry P. Burton, to them their heirs and assigns forever in equal shares"? If so, the rule of interpretation laid down in *Doe ex dem. Hearn v. Cannon,* 4 *Houst.* 20, might be relied on as establishing the gift as one to individuals rather than to a class.

On the other hand, it can be as it is in substance argued,

that the peculiar language of the codicil indicates a new expression of testamentary intent with respect to the brothers and sisters; that though in the will the brothers and sisters were not provided for as a class, yet in the codicil it is manifest that they were so referred to; that none were named in the codicil except Henry P. and the manifest purpose of naming him was to make sure that he would not be excluded (as he had been in the will) ; and that this safeguard, rather than tending to show an individualization of the beneficiaries as the will had done, shows a distinct reference to them as a class—viz., brothers and sisters.

Which of these two views should be taken, I am bound to say, is a question of some perplexity. It may be that the partition decrees were founded on the view that the gift was to the brothers and sisters as a class and that the lapsing or voiding of a share by the death of one simply inured to the benefit of the survivors. Or it may be, as before suggested, that the decrees in partition were based on the conception that the word "sisters" in the codicil did not embrace Mrs. Masten who was dead, and that therefore there was no void gift in the codicil of a share in the residue to devolve as upon intestacy—in which case the question of whether the brothers and sisters took as a class would become immaterial, for all of the others survived the testator.

Whatever my own opinion upon these questions may be, I feel bound to follow the opinions which inhere in the two decrees entered by two of my predecessors in the partition causes in which this very will and all the family history were laid fully before the court. While those decrees are not *res adjudicata* as to the Mastens, they have the force of judicial decisions rendered by this court. Jurisdiction to decree partitions was founded on the assumption of their correctness and titles to land rest on them for their security. If they were so plainly erroneous as to leave no doubt upon the question they necessarily decide, I would then be put to the necessity of saying whether or not this court should

adhere to them. But my examination of the case has not led me to such a positive conclusion upon the question involved as to drive me to this necessity. I feel impelled therefore to accept the prior decisions of this court as expressive of the law of the case.

In view of the foregoing the decree must advise the complainants that the children of Mrs. Masten are not entitled to any portion of the residue, either to the one-fifth thereof as substitutes for her, or to one-fifth of one-fifth as distributees of the testator.

Decree accordingly.