MARIA BRUNO, ROBERT VALDESERE, LUCY DROKOPEL, FRANKLIN BRUNO, and JOSEPH BRUNO,

*vs.*

THE PRESIDENT, DIRECTORS AND COMPANY OF THE FARMERS BANK OF THE STATE OF DELAWARE, Executor and Trustee under Will of ARMEDO VALDESERE, JOHN EMORY BRUNO, ARTHUR VALDESERE, PATRICIA CROKOPEL, and IRENE GEORGE, CECIL LAMBERT.

*Kent, April 3, 1946.*

88

*John B. Hutton,* for complainants.

*George M. Fisher,* for respondent Farmers Bank.

SEITZ, Vice-Chancellor. The following provisions of the will of Armedo Valdesere are pertinent to the issues to be decided here:

"Item 4: All the rest, residue and remainder of my estate, real, personal and mixed wheresoever same may be situated or located, and whatsoever same may consist, of which I may die, seized and possessed or to which I may be entitled at the time of my decease, I order and direct to be converted into money as soon after my decease as can conveniently be done and for that purpose I hereby authorize, empower, and direct my Executor, hereinafter named, to sell at either public or private sale or sales and at such time or times and for such price or prices as may seem to it the best interest for my estate and by proper deed or deeds, conveyances, assignments or assurance in the Law to be duly executed, acknowledged, and perfected to grant, convey, assign, and assure the same to the purchaser or purchasers thereof in fee simple, without liability on the part of the purchaser or purchasers for the application, non-application or mis-application of the purchase money, and when my said estate shall have been converted into money as aforesaid I give and bequeath all of the same unto the President, Directors and Company of the Farmers Bank of the State of Delaware of Dover, Delaware, its successors and assigns, In Trust, Nevertheless, to invest the same in some good and safe interest bearing securities, or just mortgages on land, with power to call in and reinvest the same, and the interest or income arising therefrom, after deducting reasonable com-

pensation for services to pay over semi-annually, from the day of my death to my children, namely; Maria Bruno, Robert Valdesere, Irene George, Margarita Lambert, and Lucille Drokopel, and to the survivor of them, in equal shares and as Francolin Bruno, Joseph Bruno, John Emory Bruno, Arthur Valdesere, Joseph Valdesere, and Patricia Drokopel respectively arrive at the age of twenty-one years then their equal portion or share of said principal sum shall be paid unto them within six months from their majority, freed, and discharged from any Trust, whatsoever.

"Item 5: Any rest and remainder of my estate, real, personal or mixed, I give, bequeath and devise unto my grandchildren, Francolin Bruno, Joseph Bruno, John Emory Bruno, Arthur Valdesere, Joseph Valdesere, and Patricia Drokopel, their heirs and assigns, forever."

It will be seen that by Item 4 of his will, after devising his property in trust for the benefit of his children, the testator, Armedo Valdesere, provided, in effect, that as each of his six named grandchildren in turn reached the age of twenty-one years a one-sixth interest of the trust corpus should be paid outright by the trustee to such grandchild.

By item 5 of the will, the language of which amounts to a residuary clause, the testator bequeathed the remainder of his estate to the same six named grandchildren.

One of the grandchildren named in the will, Joseph Valdesere, predeceased the testator, and in fact died a minor without issue before the will was executed.

Two of the grandchildren, Francolin (Franklin) and Joseph Bruno, have now arrived at the age of twenty-one years, and the question arises on this bill for the construction of the testator's will as to what share of the corpus shall be paid to each of them. Of course, each is entitled to a one-sixth share and the controversy centers around the one-sixth interest which was left to the deceased grandchild.

One preliminary matter requires attention. It is arguable that Item 4 and Item 5 should be considered together, because Item 4 nowhere purports to bequeath any interest to the grandchildren but merely provides when the interest,

presumably given elsewhere, shall vest in possession. However, because of the conclusions hereinafter reached with respect to Item 5, it is nòt important to consider whether or not Item 4 purports to bequeath any interest to the grandchildren. It will be assumed, therefore, that Item 4 does purport to convey such interest, and it will be further assumed that the void bequest to the deceased grandchild (*Doe ex dem. Hearn v. Cannon,* 4 *Houst.* 20, 25) falls into the residuary clause (Item 5) in the same manner as a lapsed legacy. See *Lodge v. Grubb,* 15 *Del.Ch.* 105, 132 *A.* 142, 143.

It is clear then that unless the share of the deceased grandchild passed pursuant to the language of Item 5, it did not pass under the will at all but constituted intestate property. By this, of course, I do not mean that the share of the deceased grandchild is not trust corpus so long as the trust itself exists.

Let us examine Item 5 of the will which gives, bequeaths, and devises the remainder of the estate to the testator's "grandchildren, Francolin Bruno, Joseph Bruno, John Emory Bruno, Arthur Valdesere, Joseph Valdesere, and Patricia Drokopel, their heirs and assigns, forever." Does the share of the deceased grandchild, Joseph Valdesere, as provided for in Item 5 pass pursuant to the language of that Item to the other grandchildren in equal shares so as to constitute a portion of the share which each grandchild takes outright from the trust corpus upon reaching the age of twenty-one years, or will the share be divided among them when the last one reaches the age of twenty-one years, or finally, is this Item without effect as to such share? An answer to these questions requires an answer to the following question: What is the effect of a void legacy given in the residuary clause where there are other residuary legatees?

In 4 *Page on Wills* (*Permanent Edition*) § 1436, the rule in this situation is stated as follows:

"If the void legacy or devise is given by a residuary clause, and there are no other gifts and no other residuary legatees or devisees, the gift must necessarily descend as intestate property. Even if there are other residuary legatees or devisees, the void legacy or devise descends as intestate property, and does not pass to the other residuary legatees or devisees, in the absence of words in the will which show testator's intention to the contrary; and of a statute which applies to such a case."

In *Lodge v. Grubb, supra,* the Chancellor had before him the following residuary clause:

" 'All the rest, residue and remainder of my estate, I give, devise and bequeath to the persons herein named as pecuniary legatees, and to their heirs, executors, and administrators, to be divided among them pro rata according to the amounts of money herein respectively given and bequeathed to them, and I further devise that in the event of my estate not being sufficiently large to pay all the pecuniary legacies herein bequeathed in full, then all the said pecuniary legacies shall be abated pro rata.' "

In considering the facts before him, as they related to the quoted residuary clause, the Chancellor said:

"The questions presented by the amended bill concern the disposition to be made of lapsed legacies. Some of the legacies given to particular individuals have lapsed by reason of the death of the legatees in the lifetime of the testatrix, and two of the legacies given by the general residuary clause have lapsed for the same reason."

The court disposed of these questions in the following manner:

"Those legacies which are particular and not residuary and are now lapsed, have fallen into the residue and are disposed of by the residuary clause. The shares in the residue which were bequeathed but lapsed by reason of the deaths of the legatees are to be disposed of by the executor as on the intestacy of the testatrix. Of course if the residuary legatees had been given a joint interest, or had been treated by the testatrix as a class, a different result might ensue. But there is no room to contend that such is the case."

Subsequently, in *Burton v. Masten,* (1931) 18 *Del.Ch.* 242, 158 *A.* 136, *at page* 139, the same Chancellor said:

"Certainly, looking at the will alone, the brothers and sisters were not to take as a class. This is manifest, if for no other reason,

from the fact that he specifically designated four out of five then living. The only countenance that can be given to the idea of a class gift is to be found in the language of the codicil where the testator said 'I give * * * to my brother, Henry P. Burton, * * * an equal share with my other brothers and sisters in and to all the remainder and residue of my estate, to him, his heirs and assigns forever.' Now should this language be understood, when taken in conjunction with the language of the will, as simply meaning to list Henry by name with the others who were already specifically named in the will as though, taking the will and codicil together, he had said 'to my brothers and sisters, namely Thomas D. Burton, Benjamin F. Burton, Lydia A. Tomlinson, Sarah R. Masten and Henry P. Burton, to them their heirs and assigns forever in equal shares'? If so, the rule of interpretation laid down in Doe ex dem. Hearn v. Cannon, 4 Houst, 20, might be relied on as establishing the gift as one to individuals rather than to a class.

"On the other hand, it can be as it is in substance argued, that the peculiar language of the codicil indicates a new expression of testamentary intent, with respect to the brothers and sisters; that though in the will the brothers and sisters were not provided for as a class, yet in the codicil it is manifest that they were so referred to; that none were named in the codicil except Henry P. and the manifest purpose of naming him was to make sure that he would not be excluded (as he had been in the will); and that this safeguard, rather than tending to show an individualization of the beneficiaries as the will has done, shows a distinct reference to them as a class—viz., brothers and sisters.

"Which of these two views should be taken, I am bound to say, is a question of some perplexity. It may be that the partition decrees were founded on the view that the gift was to the brothers and sisters as a class and that the lapsing or voiding of a share by the death of one simply inured to the benefit of the survivors. * * *"

It is apparent that the decision the court reached in the *Burton* case, which, in effect, passed the interest to the other residuary legatees, was really based on practical considerations and it is not clear that the previous opinions involving the same will, which were affirmed in the *Burton* case, were actually decided on the point here involved.

The Chancellor did, however, in the *Burton* case cite the following example which, along with his statement thereon, would seem to be authority for the conclusion that

Item 5 of the will here involved did not transfer the interest of the deceased grandchild to the other residuary legatees:

"* * * 'to my brothers and sisters, namely, Thomas D. Burton, Benjamin F. Burton, Lydia A. Tomlinson, Sarah R. Masten and Henry P. Burton, to them their heirs and assigns forever in equal shares'?" Of this example, the Chancellor said: "* * * the rule of interpretation laid down in *Doe ex dem. Hearn v. Cannon*, 4 *Houst.* 20, might be relied on as establishing the gift as one to individuals rather than to a class."

In *Doe ex dem. Hearn v. Cannon, supra,* the Court of Errors and Appeals of this State had before it the following provision which was not a residuary clause:

" 'I give and devise all my real estate to Elijah Cannon and Joseph Cannon and William Cannon, sons of my sister Elizabeth who was the wife of Isaac Cannon, to be equally divided between them, to be held by them, their heirs and assigns forever, provided that the said Elijah, Joseph, and William Cannon shall take care of and suitably provide for their sister, Eliza Wilmer, for and during her natural life.' "

Elijah Cannon, the first named devisee, was dead when the will was executed, and the question arose as to whether his share should pass over to the other named devisees. The court reached the following conclusion:

"* * * we are of opinion that the seventh item of the will [quoted above] does not create a joint tenancy or constitute a devise to the sons of his sister Elizabeth generally, but that the devise to Elijah is void. And the fact that the testator knew when he made the will that Elijah Cannon was dead, together with the charge to take care of and suitably provide for Eliza Wilmer, cannot have the effect to enlarge the corpus of the estate devised in it to Joseph and William Cannon, or alter the conclusion to which we have arrived in the case."

It would seem that the language used by the Chancellor in the *Burton* case, plus the language of the court in *Doe ex dem. Hearn v. Cannon, supra,* require a construction of the residuary clause of the present will which excludes the interest of the deceased grandchild from its operation. The fact that we are here concerned with a residuary clause, while the court in *Doe ex dem. Hearn v. Cannon, supra,* was

dealing with a specific bequest provision, does not in and of itself warrant a different result.

The use in the will here involved of the term "grandchildren" followed by their names does not appear under the authorities to be a sufficiently unequivocal designation of a class, or of a joint interest as such to render operative any of the exceptions to the general rule noted by the Chancellor in *Lodge v. Grubb, supra.* See also 105 *A.L.R.* 1397; 75 *A.L.R.* 805.

A conclusion, apparently inconsistent with the result reached here, may be noted in the case of *Wolcott v. Shaw,* 1930, 21 *Del.Ch.* 1, 2 *A.2d* 913. However, it is apparent from the language of the court that the point here involved was not urged, and as the Annotator in 139 *A.L.R.* 871 states in discussing the decision:

"* * * While the result of this decision is, of course, in seeming conflict with the general rule, it should be pointed out that it was apparently assumed by both court and counsel that if the antilapse statute was inapplicable and the legacy in question must be held to have lapsed, the legacy fell into the residuum to be divided among the remaining residuary legatees, no contention being made that upon a lapse of the legacy, the share of the deceased nephew should pass to the heirs or distributees of the testatrix."

The share bequeathed to the grandchild Joseph Valdesere, therefore, constitutes intestate property and will pass as such.

The testator apparently did not intend the trust to run beyond the date when his last named grandchild reached twenty-one years of age. Nothing in the will calls for an inference that the income beneficiaries should benefit as such beyond the period mentioned. For these reasons, I feel that the trust should terminate at the time the last named grandchild reaches the age of twenty-one. At such time, the trustee will, of course, distribute the one-sixth interest to the last child and as to the one-sixth interest of the deceased grandchild, which it will have in its possession, it should

pay the same to those persons who, at the date of the testator's death, were entitled to receive his intestate property.

The respondent Bank, as executor and trustee, should, therefore, at this time pay one-sixth of the trust corpus to Franklin Bruno and one-sixth to Joseph Bruno, and should retain in the trust the share represented by the void bequest to the deceased grandson Joseph until the last named grandchild reaches the age of twenty-one years, at which time the share should be distributed in accordance with this opinion.

A decree acordingly will be advised.