ELIZABETH P. REES GOULD *vs.* ELEAET E. T. B. TRENBERTH, *Ex'x.*

MAY 31, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, J.J.

Moss, J. This is a suit in equity for the construction of the will of Jennie H. Taber, deceased. The complainant

is her sister and her sole heir and next of kin. The suit is brought against Mrs. Trenberth not only as executrix of the will but also individually, she being the sister of the deceased husband of the testatrix and devisee and legatee under the will. A certified copy of the will and of the decree of the probate court admitting it to probate was annexed to the bill of complaint.

After a demurrer by the respondent to the bill had been filed and overruled in the superior court, the respondent filed an answer, in which she admitted the allegations of the first paragraph of the bill, setting forth in substance the facts above stated, the execution of the will on July 13, 1932, the death of the testatrix on February 26, 1935, and the probating of the will. In this answer the respondent denied or put the complainant upon proof of the other allegations of the bill. Then, at a hearing in the superior court, evidence was presented by both parties, to assist in the interpretation of the language of the will as to which they differed. When the cause was ready for hearing for final decree, it was certified to the supreme court for determination, under general laws 1923, chapter 339, sec. 35.

In this court the respondent filed a motion to dismiss the certification, on the ground that it was not in accordance with the above section. This motion was denied by this court after a hearing. *Gould* v. *Trenberth, Ex'x.,* 59 R. I. 220, 194 A. 736.

The proper rule to be applied in the construction of a will is well stated in *Rhode Island Hospital Trust Co.* v. *Egan,* 52 R. I. 384, 387, 161 A. 124, 125, as follows: "The fundamental rule of construction of a will is that the intention of the testator is to be made effective if it is not in violation of law. To ascertain this intention the testator's language should not only receive a sensible interpretation but should be interpreted with reference to the whole will, to the subject matter relative to which it

speaks and to the circumstances existing at the time of the execution of the will relative to the testator's family and his estate." See also *Bliven* v. *Borden,* 56 R. I. 283, 288, 185 A. 239; *Billings* v. *Gladding,* 58 R. I. 218, 192 A. 216; *Colton* v. *Colton,* 127 U. S. 300. Testimony to instructions given by the testator to the draftsman of the will which differs from its language are not admissible. *Jenison* v. *Jenison,* 51 R. I. 388, 155 A. 246; *Rhode Island Hospital Trust Co.* v. *Bradley,* 41 R. I. 174, 103 A. 486; *Lewis* v. *Douglass,* 14 R. I. 604, 605, 607.

In the instant case, everything depends upon the construction to be given to the language of the whole second clause of the will, which is a short clause disposing of the residue of the estate, and no light is thrown upon that language by any other part of the will. Besides the facts above set forth as to the relations of the parties to the testatrix and particularly the fact that the complainant was the sister of the testatrix and her only heir and next of kin at the time of the execution of the will, the facts which can properly be taken into consideration in construing this will, and which are either admitted by both parties to be true or are established by uncontroverted evidence, are as follows.

At the time when the will was executed, July 13, 1932, the complainant and the testatrix were the last survivors of their family and neither had a husband living. The testatrix was then about fifty-seven years old and the complainant was eighty years old and was practically without any means of supporting herself. In 1924 the husband of the testatrix invited the complainant to come and live with them and she did so and remained with them until his death in December 1931, and continued to live with the testatrix until the latter's death February 26, 1935. The respondent herself testified that her brother and his wife, the testatrix, told her that they were to take care of the complainant and "see her through."

At the death of her husband the testatrix became the sole owner of the house and lot where they lived, which had been owned by them as joint tenants. At the death of the testatrix she left only this real estate, which was valued for tax purposes at $8280, and some personal property, which was inventoried as of the value of $57.40. At the time when the will was executed, the respondent was the widow of a Mr. Beaman and apparently her relations with the testatrix were friendly but not intimate. She afterwards married Rev. Mr. Trenberth.

Under these established circumstances the most natural and reasonable desire of the testatrix in making her will would be to provide for her sister to be taken care of for the rest of her life, in the rather improbable event that she would survive the testatrix and, subject only to such a provision, to give all the property, after payment of debts and funeral expenses and expenses of administration, to the respondent and to make her the executrix.

In the first of the numbered clauses of the will she directed her executrix, who was the respondent, to pay all the just debts of the testatrix, including those of her last illness and burial; and then in the next clause, the only disposing clause of the will, she said: "Second: All the rest, residue and remainder of my estate of whatsoever name or nature, be the same real, personal or mixed or however otherwise described and wherever located to which I may be entitled either at law or in equity, I give, bequeath and devise to my sister-in-law, Eleaet E. Taber Beaman, with the understanding that if my sister, Elizabeth P. Rees Gould, shall survive me that my said sister-in-law shall care for my said sister as long as she shall live.

Construing this language in the light thrown upon it by the facts above stated, its meaning is, in our judgment, fairly clear. The respondent contends that the only question is whether or not a precatory trust was created and that this question must be answered in the negative; but

in our opinion this is not a fair statement of the question involved, because the words "with the understanding" are not words which express a wish or request. She contends that the word "understanding", as used in the will, refers only to the state of mind of the testatrix; and she would have the determinative words of the clause construed as if they were: "it being my understanding that if my sister, Elizabeth P. Rees Gould, shall survive me, my said sister-in-law will care for my said sister as long as the latter shall live."

If the provision in question had been thus worded, the question would be a close one, whether the testatrix, in using that language, was imposing a *duty* upon her sister-in-law. But in our judgment it is more reasonable, under the circumstances of the case, to construe the word "understanding" as intended to refer to the state of mind of the devisee at least as much as to her own state of mind. In other words, we believe that the phrase "with the understanding" should be construed as it would be if Mrs. Taber, instead of making a will, had, in her lifetime, sent $5000 to her sister-in-law, inclosed in a letter in which she said: "I inclose to you herewith $5000 as a gift to you, with the understanding that so much of it as shall be needed shall be used by you for the support of my sister, if and so long as she shall survive me." In our judgment, if the sister-in-law had received such a letter, inclosing $5000, and had accepted the gift, she would have done so with the legal duty on her part to support the complainant therewith, if and so long as the latter survived her sister.

It is our opinion that the words "with the understanding", as used in the will now before us, should be construed in the same sense, and that this construction is made "doubly clear" by the fact that the testatrix did not say, "with the understanding . . . that my said sister-in-law will care for my said sister . . .", but said, "with the understanding . . . that my said sister-in-law shall care for my said sister . . . ." The word "shall", in such a clause, imports the im-

position of a *duty* and is inconsistent with the view that only an *expectation* on the part of the testatrix is involved.

Therefore, as the respondent accepted the devise of the real property in question, she necessarily accepted it subject to a charge thereon for the care of the complainant for the rest of the latter's life. The situation thus created was substantially the same as that created by the will involved in the case of *Greene* v. *Rathbun,* 32 R. I. 145, 78 A. 528. There the vital language of the will was different but somewhat similar, to wit: "give, devise and bequeath unto my daughter Rachel R. Greene all the rest and residue of my real estate and personal property for and during her natural life she to support and furnish my son William Greene in sickness and in health with board and clothing and see that he is well provided for and taken good care of during his natural life. I hereby bind all the real estate and personal property given to my daughter Rachel R. Greene to secure his support as aforesaid." The estate in remainder, after the death of the daughter, the testatrix gave to the children of another son, "they being bound to the support of my son William Greene . . . ."

This court held that the provision for the support of William Greene was virtually a legacy to him and that it was made, by the will, a charge upon the real estate and personal property devised and bequeathed as the residue of the estate. Of course, the language creating the charge was clearer than that in the instant case, but under our construction of the second clause of the will now before us the legal result is just the same.

In *Low* v. *Ramsey,* 135 Ky. 333, 122 S. W. 167, a testatrix devised and bequeathed all her real and personal estate to her son Wiatt Low, he to pay one dollar to each of her other children, and "with the understanding that he is to take and raise my children Harry and Josie until they are 15 years old." At the death of the testatrix, Josie was between seven and eight years old; but Wiatt Low never did any-

thing for her; and soon after the probate of the will he sold and conveyed the real estate to James Ramsey, from whom the defendants inherited the title to it. The daughter, long after she became of full age, brought the case to enforce a lien on the land, for her support from the death of her mother to her own attainment of the age of fifteen years.

The court at page 335, said: "In our opinion the provision in the will charging Wiatt Low with the duty of caring for Josie and Harry until they were 15 years old created a lien upon the land in their favor and for this purpose, and as the will was put to record the vendee of Wiatt was charged with notice of its provisions and held it subject to the liabilities imposed upon Wiatt." The court held, however, that the plaintiff was barred by the statute of limitations from enforcing the lien.

In *Bank of Florence* v. *Gregg,* 46 S. C. 169, 24 S. E. 64, the sixth clause of the will in question read as follows: "I devise and bequeath to my son, Reese C. Gregg, all the residue of my estate, both real and personal, and to his care the protection and support of my daughter, Catherine W. Gregg, during her natural life." Catherine was unmarried and in poor health, living with the testator and dependent on him. All the other members of the family except one, who was otherwise well provided for, as stated in the will, were elsewhere provided for in the will, but she was not; and the residue was much the larger part of the estate.

The court, in its opinion, beginning at page 180 (24 S. E. 68), set forth excellently the circumstances to be considered in determining what a testator meant by the expressions which he used in his will. It then held that under the circumstances of that case, the testator, by the language which he used, as above quoted, intended to make the support of Catherine during her life a charge upon the residue of the estate, which was devised and bequeathed to his son Reese; that therefore the will must be construed as imposing such a charge for her benefit, which she could enforce; and that

the lands passed under the devise practically subject to a mortgage to her to secure her support. See also *Shired* v. *Nesbit,* 90 S. C. 20, 72 S. E. 545, and 3 Pomeroy on Eq. Jurisp. §1246, note 1.

The respondent in the instant case seems to rely very strongly on the case of *Tillman* v. *Ogren,* 227 N. Y. 495, 125 N. E. 821. There the language in question, a part of the will of Anna C. Erickson, was as follows: "I give and bequeath to my beloved husband Lars Erickson all of the rest and remainder of my estate both real and personal to have and to hold the same to him, his heirs and assigns forever, with the understanding that at the decease of the said Lars Erickson all of the estate which he shall derive under this will which shall then remain by him undisposed of he shall give and turn over to my sister Amanda Tillman."

Lars Erickson died about eleven years after the death of the testatrix and left among his assets a sum of $1500 which the court treated as having been derived by him under his wife's will and which in his will he did not bequeath to Amanda Tillman. She brought the suit against the executor of his will to recover from him two sums, one of which was this sum of $1500. The court held that she was not entitled to it under the above-quoted clause of the will of Anna C. Erickson.

The court reached this result by the reasoning that that part of the quoted language which preceded the words "with the understanding" was language which clearly made to the husband an unqualified and absolute gift of the residue of the property of the testatrix; that if the rest of the quoted language, beginning with those words, were construed as intended to limit the gift to him to a life estate, with a power of consuming during his life so much of the principal as he pleased, and as intended to give the remainder to the sister on his death, there would be a repugnancy between the language of the two parts; that to make the latter part prevail over the former part the

intent of the testatrix to do so must be expressed in *plain* and *clear* terms; and that such an intent was not thus expressed.

CARDOZO, J. dissented from the conclusion of the rest of the court, though the position of the plaintiff was very much weaker than is the position of the complainant in the instant case. Here the doctrine of repugnancy is not at all involved, for the reasons that the interests which the testatrix showed her intent to create would come into operation concurrently and not one after and cutting short the other, as in cases of repugnancy, and that there is no language in the first part of the clause in question with which the language of the rest of the clause is inconsistent. Therefore we should give the latter language its natural and most reasonable construction; and we see no inconsistency between our conclusion, above stated, in the instant case and the reasoning and decision of the majority of the court in *Tillman* v. *Ogren, supra.*

The respondent also relies on *Harkness* v. *Zelley,* 100 N. J. Eq. 48, 135 A. 347. There the testator gave, devised and bequeathed the residue of his property to Alice M. Harkness "absolutely for her sole use and benefit forever, . . . with the request and understanding that she will provide by a last will and testament that should she decease before my brother Charles E. Zelley that he shall have the income from what may remain of my estate for and during the term of his natural life . . . ." It was held that Charles E. Zelley received no enforceable right. There the word "request" greatly weakened the effect of the word "understanding", and the use of the word "will" instead of the word "shall" strongly indicated a *wish* by the testator, rather than an intention to impose a legal duty upon the first taker.

But the most important feature of that case, which most obviously differentiates it from the instant case, is that, if the latter part of the clause, beginning with the

words "with the request", had been construed as imposing an enforcible duty on the legatee and devisee, it would certainly have been repugnant to the clear and definite language of the first part of the clause. The decision was plainly based on this repugnancy and it does not support the contention of the respondent in the instant case.

We are of the opinion that under the proper construction of the will of Jennie H. Taber, now before us, the respondent was given the residue of the estate of the testatrix subject to a valid charge thereon for the care of the complainant, so long as the complainant should survive the testatrix.

On June 15, 1938, the parties may present to this court a form of decree, in accordance with this opinion, to be entered in the superior court.

*LeRoy G. Pilling,* for complainant.

*Grim & Littlefield, Benjamin W. Grim,* for respondents.