RUSSELL M. DOAR *et al. vs.* ANNIE DEWOLF DOAR *et al.*

JUNE 16, 1939.

PRESENT: Flynn, C. J., Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J.   This is a bill in equity brought in the superior court by these complainants for the construction of

the will of Anna E. Middleton, late of the town of Bristol, deceased, and is certified by the superior court to this court under the provisions of general laws 1923, chapter 339, sec. 35.

The complainant, Russell M. Doar, hereinafter referred to as Russell, is a grandson of the testatrix and is a beneficiary under the will. The other complainant, Sarah Smith Doar, is the wife of Russell. The respondent, Annie De-Wolf Doar, hereinafter referred to as Annie, is a granddaughter of the testatrix and makes the same claim as Russell under this will. She is joined as respondent because of mental disability. Her interests are represented by a guardian *ad litem*. Russell and Annie are relatives by the full blood of the testatrix. With the exception of the Blackstone Canal National Bank of Providence, hereinafter called the Blackstone Bank, the many other respondents are nephews, nieces, grandnephews and grandnieces by the half blood of Annie Elizabeth Middleton and Alicia Hopton Middleton, daughters of the testatrix.

Due service was made upon all competent and known respondents, and a guardian *ad litem* was appointed to represent the interests of infants and of all unknown persons. All the competent respondents, excepting the Blackstone Bank, either filed answers admitting all the allegations of the bill and joining in the prayer for relief, or allowed decrees *pro confesso* to be entered against them. The Blackstone Bank admitted certain allegations and neither admitted nor denied all the other allegations in the bill. The guardians *ad litem* filed answers submitting the rights of respondents under disability to the protection of the court.

The will of Anna E. Middleton now before us, was executed in Bristol, Rhode Island, August 18, 1905. She died in Bristol on February 10, 1908 and her will was admitted to probate by the probate court of that town on March 16, 1908.

When the testatrix married Nathaniel Russell Middleton he had three sons but no daughter by a former marriage: Walter, Henry and Arthur Middleton. Walter died unmarried soon after the civil war, and Henry died unmarried in 1908. Arthur married and had ten children, seven of whom were living when the testatrix executed her will in 1905. Three of these children died between 1905 and September 9, 1938, when the bill of complaint in the instant cause was filed. The remaining four children, James S. Middleton, William D. Middleton, Lucy I. Middleton Munnerlyn and Helen Middleton Dehon, are respondents in this cause. All the other respondents before us are grandchildren of Nathaniel Russell Middleton by his first wife.

The testatrix had five children from her marriage with Nathaniel Russell Middleton, one son and four daughters. The son, N. Russell Middleton, died in 1896. In 1905, when she made her will, her daughters, Annie and Alicia, were unmarried; Charlotte was married but childless; and Maria, who married Thomas W. Doar, had three children: Thomas W., who died in 1919; Russell M., the complainant, and the respondent, Annie DeWolf Doar. The testatrix's daughter Alicia survived her three sisters, and she died in Bristol, May 12, 1938.

Certain situations disclosed by the evidence may well be noted at this point. When the testatrix made her will in 1905, her daughters Annie and Alicia had living two sisters, two nephews and one niece of the full blood. They also had three nephews and four nieces of the half blood. When Alicia died in 1938, she had no sisters; one nephew, the complainant Russell; and one niece, the respondent Annie DeWolf Doar. She was also survived by two nephews and two nieces of the half blood, all of whom are joined as respondents in this cause.

According to the complainant Russell, who was the only witness to testify and whose testimony stands without cross-

examination, the two parcels of real estate involved in this cause, situated in the town of Bristol and known as "Hey Bonnie Hall" and "Hayfield", never belonged to Nathaniel Russell Middleton, the husband of the testatrix, or to his family. The first parcel came to the testatrix through the DeWolfs, her mother's family, and she acquired the second parcel about the time of the Civil War.

The evidence further shows that, after the death of her sister Annie, Alicia brought a petition in the superior court for the appointment of a trustee to sell a portion of "Hey Bonnie Hall" under the provisions of G. L. 1923, chap. 296, secs. 18, 19 and 20. In that proceeding the Blackstone Bank was appointed trustee. It was given authority to sell a portion of "Hey Bonnie Hall", and directed to hold, invest and reinvest the proceeds of such sale for the benefit of those persons who would have been entitled to the real estate if the sale had not been made, paying the net income thereof to Alicia for and during the term of her natural life. Soon after the death of Alicia, the complainant Russell demanded that the Blackstone Bank pay over to him one half of the proceeds which it received from the sale of a portion of "Hey Bonnie Hall", claiming that he and his sister, the respondent Annie DeWolf Doar, were the only persons entitled to the entire proceeds of such sale. The Blackstone Bank, knowing that there were surviving nephews, nieces, grandnephews and grandnieces of the half blood of Alicia, refused to comply with Russell's demand pending a construction of certain paragraphs of the will of Anna E. Middleton, now before us.

The particular paragraphs of the will that are questioned in this cause read as follows: "As to my property in Bristol township county of Bristol, State of Rhode Island I do divise and bequeath the same as follows. To my beloved daughters Annie Elizabeth and Alicia Hopton, my Place on Pappoosesquaw known as 'Hey Bonnie Hall' with Lawn of eleven and two thirds acres and house and buildings thereon,

with all rights, privileges and hereditaments appertaining thereto to share and share alike for their natural lives, the survivor to take the whole Estate and at the decease of both the said Estate to go *to any of their surviving Sisters or Sister, nephews or niece* their heirs and assigns forever."

"Also my farm on Walnut Street Known as 'Hayfield' consisting of thirty acres more or less, I do bequeath and divise to my two beloved daughters Annie E. and Alicia H. with house & buildings, and all rights, privileges, and hereditaments appertaining thereto; to have and to hold on the same terms as the foregoing (The Estate at Pappoosesquaw)" (italics ours).

The questions submitted for our determination are as follows.

"1. Do the words 'any of their surviving Sisters or Sister, nephews or niece' above referred to include the nephews and nieces of the half blood of Alicia Hopton Middleton?

"2. Do the words 'any of their surviving Sisters or Sister, nephews or niece' above referred to include grandnephews and grandnieces of the half blood of Alicia Hopton Middleton?

"3. If question No. 2 is answered in the affirmative, do the words 'any of their surviving Sisters or Sister, nephews or niece' include all of the grandnephews and grandnieces of the half blood of Alicia Hopton Middleton alive at her decease or only grandnephews and grandnieces of the half blood who are children of half nephews and half nieces of Alicia Hopton Middleton who predeceased her?

"4. If question No. 2 is answered in the affirmative, do the grandnephews and grandnieces of the half blood of Alicia Hopton Middleton determined by question No. 3 share with the nephew and niece of the whole blood and the nephews and nieces of the half blood per capita or per stirpes?"

Keeping in mind the rather complex family history that we have summarized in so far as pertinent to this cause, it is apparent that the clause in the will above italicized "to any of their surviving sisters or sister, nephews or niece" presents a case of latent ambiguity. The question is: Who did the testatrix intend to include as the objects of her bounty by using that language? One thing is certain, and that is that the term "surviving sisters or sister" of Annie and Alicia can only refer to their sisters of the full blood, Charlotte and Maria. When the testatrix made her will she had two stepsons but no stepdaughter, so that it cannot be argued that the term "surviving sisters or sister" of Annie and Alicia included any daughters or daughter of the testatrix's husband by his first marriage. It is also significant that the words "brothers or brother", which might refer to Annie's and Alicia's brothers of the half blood are not in the above italicized clause. Therefore, the sole question for us to determine is whether the testatrix intended to limit her bounty to "any . . . nephews or niece" of the full blood of her daughters, Annie and Alicia; or whether she intended to include by that language the three nephews and four nieces of the half blood of Annie and Alicia, who were living when the testatrix made her will.

Where a latent ambiguity exists, resort must of necessity be had to construction. It is a cardinal rule of construction that the testator's intention must control if it is not inconsistent with some established rule of law. In ascertaining a testator's intention, the language in question should be reasonably interpreted with proper reference to the whole will, to the subject matter relative to which it speaks, and to the circumstances existing at the time of the execution of the will respecting the testator's family and estate. *Gould* v. *Trenberth,* 61 R. I. 5, 199 A. 696.

Usually the words of a testator will be given their ordinary meaning. But if it is clear that the testator is using

language in a special sense, it will be interpreted in that sense, since the test is what the words meant to him and what thought he intended to convey by his use of them. *Industrial Trust Co.* v. *Wilson,* 58 R. I. 378. A will is to be read as a whole in ascertaining the intention of a testator in the use of certain language. If the will discloses an underlying intent as to the persons or class that the testator means to make the objects of his bounty, such intent is to be considered in determining the meaning to be accorded the particular language under consideration. The application of this principle of construction at times requires, in order to carry out the intention of the testator as disclosed in the will as a whole, that a narrower interpretation be given to certain words than they import in their broad significance.

We will now apply these well-recognized rules of construction to the will in this cause. We have already noted that "Hey Bonnie Hall" and "Hayfield" was property that did not come to the testatrix through her husband or his family; that, when the testatrix executed her will in 1905, she made no mention in the clause under consideration of any brothers or brother of the half blood of Annie and Alicia, although two such brothers were then living; and that the term "surviving sisters or sister" could only apply to the sisters of the full blood of Annie and Alicia because they never had any sisters of the half blood.

Even a casual reading of the whole will, which was probably written by the testatrix herself, irresistibly leads to the conclusion that the testatrix was interested solely in her daughters, Maria, Charlotte, Annie and Alicia, and the children of Maria, that is, Thomas W.; the complainant, Russell, and the respondent Annie Doar. These persons and no others are made the objects of her bounty. To them she devises all her real property in South Carolina and in Illinois, as well as in Rhode Island, and to them she bequeaths, by careful apportionment and description, all of her personal

property, consisting of stocks, bonds, rare paintings and pictures, silverware, and household furniture.

Excluding for the time being the clause under consideration, there is not the slightest indication in the will that the testatrix had her husband's children or their descendants in mind when she executed her will, and much less that she intended to bestow her bounty upon them. The will clearly discloses a general underlying intent on the part of the testatrix to make her four daughters and their children the sole objects of her bounty.

That the testatrix had a fixed general intent to thus limit the persons or class who were to benefit under her will is further unequivocally established by four incomplete drafts of a will in her own handwriting, which are in evidence as exhibits 4, 5, 6, and 7. In each of these drafts, as in the will before us, the only persons mentioned therein are her four daughters and the two sons and one daughter of testatrix's daughter Maria; and in each instance "Hey Bonnie Hall" and "Hayfield" are devised substantially in the same manner as in the will under consideration. For example, in exhibit 5, "Hey Bonnie Hall" is devised to Annie and Alicia for life, with remainder to "any sister or sisters or niece or nephews that may survive them"; and in exhibit 6, we find the same life estates in the testatrix's "property in the township of Bristol, County of Bristol, State of Rhode Island," with remainder to "any surviving sister or sisters or nephews and niece their heirs and assigns forever."

It is to be noted that the clause in the will under consideration hereinbefore quoted and italicized by us refers to "nephews or niece", the former word being in the plural and the latter in the singular. But the word "any" precedes those words in that clause, so that it reads: "any . . . nephews or niece", a circumstance which apparently escaped the attention of all the parties in this cause. This fact caused us to examine the will and the surrounding circumstances

disclosed in the record before us with the utmost care, having in mind that we were dealing with the rights of infants, of unknown persons, and of adults under disability.

Our statutes of distribution (G. L. 1923, chap. 367) make no distinction between relatives of the full and of the half blood in respect of inheritance from each other, unless the estate is ancestral. *Batcheller-Durkee* v. *Batcheller*, 39 R. I. 45, 68; *McNeal* v. *Sherwood*, 24 R. I. 314, 316; *Grundy* v. *Hadfield*, 16 R. I. 579, 581. In the absence of a clear intention to the contrary, the words "nephew" and "niece" in the will before us might well refer to a nephew or niece of the half blood as well as one of the full blood. Is there anything in the clause itself in conjunction with established facts showing that the testatrix's intention was otherwise? The use of the word "niece" in the singular might be attributed to an error in writing if the surrounding circumstances did not show that the testatrix intended that word to apply only to one person. Such an intention is to be found from the will and the evidence in this cause.

We have already seen that the will clearly shows a general underlying intent of the testatrix to limit her bounty to her relatives of the full blood, for they are the only ones that she mentions in the will. This general intent is clearly confirmed by the four incomplete drafts in evidence, which we have above considered. Although these drafts show differences in the property that is devised or bequeathed and the extent of such devise or bequest, not one of them mentions a single beneficiary who is not of the full blood of the testatrix, just as she does in the will under consideration.

It is significant that in the only two instances where a clause similar to the one before us is used in these drafts the word "niece" is in the singular in each instance. This, taken in connection with the testatrix's general underlying intent, is strong proof that the word "niece" was intentionally used in the singular by the testatrix in her will to desig-

nate one of her full blood who fitted that description; and further, that such word so used by her was not the result of accident or mistake, but rather the expression of a specific intent in the execution of a carefully considered plan.

Looking further, we find that the facts in evidence irresistibly lead to the conclusion that by the clause in question the testatrix intended to leave the remainder of the estates that she had devised for life to her two daughters, Annie and Alicia, to a "niece" of those two daughters of the full blood. When the will was executed in 1905, her daughter Charlotte, sometimes called "Lottie", was 51 years old; Alicia was 56; Annie 59, and Maria 61. Two sons and one daughter of Maria were then living. They were, therefore, "nephews or niece" of the full blood of Annie and Alicia, who were given life estates in the devises involved in this cause. It is reasonable to infer that the testatrix in making her will had in mind the fact that the possibility of her daughters having other children was very remote. In the light of these circumstances, the phrase "nephews or niece" in the will describes exactly, with respect to sex and number, the nephews and niece of the full blood of Annie and Alicia. These persons are further definitely identified by the testatrix in other provisions of the will as "my two dear Grandsons Thomas Watts and Russell Middleton Doar" and as "my beloved granddaughter Annie DeW. Doar."

For the reasons above stated, our final conclusion is that it was clearly the intention of the testatrix, Anna E. Middleton, to limit the devise in remainder of "Hey Bonnie Hall", and of "Hayfield" to the "nephews or niece" by the full blood of her daughters, Annie and Alicia. When the survivor of these two daughters of the testatrix died in 1938, the complainant Russell M. Doar and the respondent Annie DeWolf Doar were the only living nephew and niece of the full blood who survived her.

We are of the opinion that Russell M. Doar and Annie DeWolf Doar are entitled to equal shares in the estate herein described to the exclusion of all nephews, nieces, grand-nephews and grandnieces by the half blood of the testatrix's daughters, Annie and Alicia. Therefore, our answer to questions 1 and 2 in each instance is in the negative. In the circumstances, questions 3 and 4 need not be answered.

On June 21, 1939, the parties may present a form of decree in accordance with this opinion.

*Stockwell, Chace & Yatman, Elmer S. Chace,* for complainants.

*Hinckley, Allen, Tillinghast & Wheeler, W. Harold Hoffman,* for Blackstone Canal National Bank.

*Charles C. Remington,* Guardian *ad Litem,* for Annie DeWolf Doar.

*Louis D. Richardson,* Guardian *ad Litem,* of unknown persons.