NATIONAL STATE BANK OF NEWARK, NEW JERSEY, et al., executors of the last will and testament of Thomas J. Stewart, deceased, complainants-respondents,

*v.*

CORNELIA HENRIETTA STEWART et al., defendants-respondents, and ERNEST B. SLADE, defendant-appellant.

[Argued May 19th, 1944.   Decided October 6th, 1944.]

*Messrs. Stickel & Stickel (Mr. Fred G. Stickel, Jr., and Mr. Harold M. Kain, of counsel), for the appellant.*

*Mr. T. Bryant Smith and Mr. George W. C. McCarter, for the complainants-respondents.*

*Messrs. Carpenter, Gilmour & Dwyer (Mr. Howard C. Gilmour, of counsel), for the defendants-respondents.*

The opinion of the court was delivered by

HEHER, J.

The question for decision is whether the decree correctly construes the fifteenth paragraph of the will of Thomas J. Stewart, deceased. A trust of the residuary estate was thereby created; and the trustees were directed to distribute the income thereof in part as follows:

> "Thirty per cent. (30%) of said income to my children me surviving, equally, share and share alike; and in the event any of my children shall predecease me leaving a lawful spouse, him or her surviving, the share of income of such child shall be paid over to such surviving spouse."

The testator died on October 6th, 1940, survived by his widow, four sons and a daughter, Hazel Stewart Stirling. The testament was made on June 26th, 1940. One of the testator's children, Cornelia S. Slade, was then deceased. She died on April 10th, 1936, survived by her husband, the appellant, and two children. The learned Vice-Chancellor ruled that the testator intended to give to the surviving spouse of a deceased child, by way of substitution, the share of the income bequeathed to such child, if he or she survived the testator, and that Cornelia, "having predeceased the testator, * * * was not a child to whom the testator directed income should be paid." But the condition which he considered as controlling was the death of Cornelia prior to the making of the testament. At all events, the sole question now raised is whether the testator designed an "independent gift" to the spouse of a child dead when the will was made.

It is said that "there is no evidence in the will that the testator intended to exclude the spouse of his deceased daughter from a share in the income," and that the decree in this respect disregards the canon of construction applied in the case of *Outcalt* v. *Outcalt, 42 N. J. Eq. 500*. The doctrine is invoked that the testator is presumed to have phrased the bequest in the light of the rule of construction adopted in the cited case, and an intention at variance with that interpretation is not to be accepted unless explicitly manifested.

The judicial interpretative function is to find the meaning of the testator as expressed in the language used, considered in the light of the. attendant circumstances, and enforce it unless forbidden by positive rules of law or public policy. If the testamentary purpose is exhibited by terms that are clear and unequivocable, there is no room for construction in its general acceptation. *In re Fisler, 133 N. J. Eq. 421.* The spirit prevails over the letter of the testament. All principles and rules in aid of interpretation yield to the intention revealed by the context. And words are to be given their primary and natural significance unless the context renders it clear that they were employed in a different sense. The *prima facie* meaning of the terms cannot be rejected in favor of a larger construction without a clear indication of such a purpose. Speculation as to the testamentary intention is not permissible. The judicial authority may not rewrite the will, in whole or in part. And blind adherence to precedent as respects the meaning of a particular phrase is fraught with peril to the testamentary design, for, as said, intention is to be gathered from the instrument as a whole, and it rarely happens that the wills are substantially alike.

The bequest here is not an original substantive gift to the spouse of the deceased child; Cornelia. It is purely substitutionary in character; and it does not embrace Cornelia's husband. When the will was made, she was long since dead to the testator's knowledge. The bequest is couched in terms of futurity, and it cannot be read as applying to the husband of a child then deceased without disregarding the normal meaning of the language, and thus doing violence to the expressed testamentary intent. The word "shall" naturally

imports futurity. As here used, it excludes the spouse of a child then dead. The phrase is "shall predecease me," rather than "shall have predeceased me."

Conceding that such is the common sense and significance of the language, appellant urges that words of futurity may also be read as applying to the past. The principle of the English case of *Loring* v. *Thomas (1861), 1 Dr. & Sm. 497,* is invoked. This case was followed by Vice-Chancellor Malins in *Re: Potter's Trust (L. R.), 8 Eq. 52,* cited with approval by Chancellor Runyon in *Outcalt* v. *Outcalt, supra.* Of course, words of futurity may be construed as also having reference to the past. But they are to be given such abnormal usage only when required to effectuate a testamentary purpose otherwise clearly indicated. As said by Vice-Chancellor Kindersley in *Loring* v. *Thomas, supra,* it is in every case a question of intention to be gathered from the testament as a whole. *Vide Adrian* v. *Koch, 83 N. J. Eq. 484.* The adoption of the principle of construction enunciated in *Loring* v. *Thomas* was largely due to the reluctance of the courts to exclude the representation or substitution of the children of a deceased child. In such cases, slight expressions have been laid hold of to justify the rejection of the *prima facie* meaning of terms of futurity in order to effectuate the probable intention of the testator to treat all his grandchildren with equality, rather than to make an invidious distinction between them. The principle has been applied to avoid the frustration of what in the particular case has been deemed the obvious intention of the testator, on the hypothesis that if exclusion was intended, it would have been expressed in unmistakable terms.

The English cases reveal much conflict and confusion in the application of this canon of interpretation until the House of Lords pronounced judgment in the case of *Gorringe* v. *Mahlsledt (1907), A. C. 225.* There, the will bequeathed pecuniary legacies to the children of a son of the testator deceased at the time the will was made; and the residue was given in trust for such of the testator's children as survived him, with a provision for the representation or substitution of the children of a child who "shall predecease

me." The judges of the lower courts were in disagreement as to whether the principle of *Loring* v. *Thomas* governed. *In re: Gorringe* (1906), 1 Ch. 319; (1906), 2 Ch. 341. The House of Lords ruled that the language was "perfectly intelligible and applicable to the facts which the testator must have known," and must be given its natural meaning. Lord Chancellor Halsbury continued: "The proposition that I propose to adopt is this, that unless the ordinary and usual meaning of the words leads to some absurdity or something which is, to use the language of Kindersley, V. C., 'manifestly contrary to the testator's obvious intention,' I will simply construe the language of the will itself and give effect to the meaning of those words according to the ordinary and proper meaning of them. * * * Unless there is something in the context of a will which prevents the ordinary and proper construction of the words in their natural meaning, I believe that every court ought to adhere to that meaning and to give it effect." The bequest was declared to be simply substitutional, and not an independent gift to all the grandchildren.

So it is here. The particular bequest was to the testator's children living at the time the will was made who should survive him; and it then provided for the substitutionary gift "in the event any of my children shall predecease me leaving a lawful spouse, him or her surviving." Cornelia's husband is plainly not in this category. To hold that he is would violate the plain and obvious intention of the testator. The considerations which underlie the principle of construction adopted in the case of *Outcalt* v. *Outcalt, supra,* are not present here.

We discern nothing in the context that calls for a different construction.

It is urged that the use of the word "spouse" is significant, since the term "widow" would have sufficed, if appellant was not in contemplation as a legatee, unless "a man as old as the testator was intended to provide for the remote contingency of the remarriage of his divorced daughter (Hazel) and her death and the survival of her husband all within the span of testator's life."

This is purely speculative; and the construction of wills does not rest upon such considerations. And the argument itself is manifestly unsound. It was far more unlikely that the testator's wife, who was then 77 years old, would remarry if she survived him; and yet he made provision for that contingency. And in the sixteenth paragraph of the will, the word "spouse" was employed when it could have reference only to a widow or widows.

The further argument that the will as a whole "reveals a passion for equality among his various classes of beneficiaries," and it is therefore reasonably deducible that he did not intend to "discriminate" against appellant, is also entirely conjectural.

Decree affirmed.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, RAFFERTY, HAGUE, THOMPSON, DILL, JJ. 15.

*For reversal*—None.