ESTATE OF EMILY L. McCUNE, DECEASED, CURTISS S. McCUNE, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of McCune v. Commissioner
Docket No. 19387-82.
United States Tax Court
T.C. Memo 1984-580; 1984 Tax Ct. Memo LEXIS 96; 48 T.C.M. (CCH) 1510; T.C.M. (RIA) 84580; October 31, 1984; As Amended November 1, 1984 Frank J. Miller, for the petitioner. Joellyn R. Cattell, for the respondent. FEATHERSTON MEMORANDUM OPINION FEATHERSTON, Judge: Respondent determined a deficiency in petitioner's estate tax in the amount of $75,363.92. The only issue for decision is whether *97 petitioner, the estate of Emily L. McCune, deceased, is entitled to a marital deduction under section 2056(a)[1] based on a bequest to decedent's surviving spouse. All of the facts are stipulated. Emily L. McCune (hereinafter decedent) died testate on January 19, 1980. Following a provision for the payment of her debts and funeral expenses, Item First of decedent's will bequeathed $25,000 to her daughter. Item Second provided as follows: ITEM SECOND: All the rest, residue and remainder of my Estate, whatsoever and wheresoever Situate, I give, devise, and bequeath to my husband CURTISS SALISBURY McCUNE, with the understanding, that, should he re-marry, whatever monies h e has received from me shall be equally bestowed upon my daughter * * * and my four grand-daughters * * *. In the final paragraph of the will, decedent's husband, Curtiss Salisbury McCune, was designated as executor of the will. Relying upon Item Second of the will, petitioner claimed a marital deduction of $250,000 on its estate tax return. Sec. 2056(a). In the notice of deficiency, *98 respondent reduced the marital deduction from $250,000 to $5,690, limiting the deduction to the value of jointly owned property, on the ground that-- the spouse's interest in the balance of the property will fail on the occurrence of his remarriage and therefore is a terminable interest under IRC section 2056(b)(1). Section 2056(a) allows a deduction, subject to certain limitations, for the value of any interest in property which "passes or has passed from the decedent to his surviving spouse." This general marital deduction rule is qualified in several respects. One qualification is that no marital deduction will be accorded a "terminable interest." Sec. 2056(b)(1). [2] The definition of that term has been concisely stated in Allen v. United States,359 F.2d 151, 154 (2d Cir. 1966), as follows: A terminable interest is defined, in general, as one which possesses the three characteristics found in sections 2056(b)(1)(A) and (B). First, it must be an interest in property which will terminate upon the occurrence or non-occurrence *99 of an event or upon the lapse of time. Second, another interest in the same property must pass or have passed to someone other than the spouse from the decedent for less than an adequate consideration. And third, such other person must be able to possess or enjoy a part of such property upon the termination of the spouse's interest.With certain exceptions not relevant to this case, the interest bequeathed to a spouse qualifies for the marital deduction unless all three of these characteristics are present. It is now well settled that the determination of whether an interest is terminable is to be judged in the light of events at the precise moment of the decedent's death. * * * [Fn. ref. omitted.] See also sec. 20.2056(b)-1, Estate Tax Regs. *100 Petitioner contends that decedent made a gift to her husband under Item Second of her will in absolute terms, and that the language which follows those terms--"with the understanding, that, should he re-marry, whatever monies he has received from me shall be equally bestowed upon my daughter * * * and my four granddaughters"--is precatory only. Petitioner argues that the language following the outright gift was "the expression of a wish or hope, communicated to the husband, that the husband bequeath the property to the daughter and granddaughters even though he remarries." Respondent argues that decedent did not make an absolute gift to her husband because the clause introduced by the words "with the understanding" is "mandatory" and imposes a "condition subsequent" on the bequest to the husband. Respondent maintains that the will should be given effect as if the "with the understanding" clause read: "provide that" or "on the condition that." Respondent argues that it does not matter whether the language is interpreted-- as a testamentary bequest to the daughter and granddaughters, as a testamentary trust in favor of the daughter and granddaughters, as an agreement *101 or contract by the husband to transfer the property to the daughter and granddaughters immediately upon his remarriage, [or] as an agreement or contract by the husband to bequeath the property to the daughter and granddaughters in his will. Under any one of these interpretations, respondent argues, the gift is contingent and is, therefore, a terminable interest for which the estate is not entitled to a marital deduction. The parties agree that this ambiguous instrument, which petitioner's counsel states was drafted by decedent herself, must be interpreted in accordance with Delaware law. Wilmington Trust Co. v. Wilmington Trust Co.,26 Del. Ch. 397, 24 A.2d 309, 312 (1942); see Morgan v. Commissioner,309 U.S. 78, 80 (1940); Helvering v. Stuart,317 U.S. 154, 162 (1942). They also agree that the intent of the testatrix must be determined from the language used in the will. [3] In cases of real doubt, however, consideration may be given to pertinent material facts and circumstances which throw light on the intended meaning *102 of the language used. Bird v. Wilmington Soc. of Fine Arts,28 Del. Ch. 449, 43 A.2d 476, 484-485 (1945), affg. Wilmington Trust Co. v. Wilmington Soc. of Fine Arts,27 Del. Ch. 243, 34 A.2d 308, 312 (1943); Hall v. Crandall,25 Del. Ch. 339, 20 A.2d 545, 547 (1941); Maloney v. Johnson,24 Del. Ch. 77, 5 A.2d 660, 661 (1939). *103 In ascertaining decedent's intended meaning of the language of Item Second, it is pertinent that decedent's will shows that it was executed on May 17, 1973. The estate tax return discloses that decedent was born on October 8, 1909, and that the married her husband, who survived her, on November 7, 1931. Decedent was thus 64 years of age when she made her will, and at that time she and her husband had been married 42 years. This was hardly an "autumn marriage." Nonetheless, the "with the understanding" clause indicates that she recognized the possibility that her husband might remarry and bestow property he had received from her to a new wife. The issue turns on whether that clause, which appears to have been included in the will in recognition of that possibility, is mandatory or precatory. We conclude that the language is precatory and, thus, we hold for petitioner. In the first clause of Item Second, decedent placed no restrictions on her husband's consumption of the property he received from her. The "give, devise, and bequeath to my husband" clause is unqualified and covers "All the rest, residue and remainder of my Estate." This was not a gift of money or income *104 from property, but of the property itself. This portion of Item Second is not ambiguous; standing alone it was obviously sufficient to pass decedent's residuary estate to her husband. In other words, decedent's gift to her husband was absolute. In a long line of cases the courts have recognized that: Where there is an absolute gift of real or personal property, in order to qualify it or cut it down, the latter part of the will should show equally clear intention to do so by use of words definite in their meaning and by expressions which must be regarded as imperative. Tillman v. Ogren,227 N.Y. 495, 125 N.E. 821, 823-824 (1920); James v. James,16 Del. Ch. 34, 139 A. 787, 788 (1927); Wilmington Trust Co. v. Pryor,26 Del. Ch. 191, 25 A.2d 685, 687 (1942); Craven v. Wilmington Teachers Ass'n.,29 Del. Ch. 180, 47 A.2d 580, 583 (1946); Goldberger v. Goldberger,34 Del. Ch. 237, 102 A.2d 338, 340 (1954); cf. Kellmann v. United States,286 F.Supp. 632, 634-635 (E.D. Mo. 1968). *105 This test is not a rule of law but is designed to assist in determining the real intention and meaning of the will as a whole. We think the "with the understanding" clause is too ambiguous to meet the test. The clause does not show a clear intention to qualify decedent's absolute gift to her surviving husband. It is precatory only. Although the language of any two wills is never exactly the same, the decided cases confirm that the "with the understanding" clause is precatory. Lewis v. Novello,22 Del. Ch. 134, 194 A.29 (1937), recognizes that the word "understanding" is highly ambiguous and holds it to be precatory in that case. The will there at issue provided (supra at 30): To my brother, John Flinn, all my possessions, with the understanding that he will properly provide and care for my son, Frank G. Maguire, who is at this time a patient in a Government Asylum. Rejecting the contention that the provision limited or qualified the language of absolute gift to John Flinn and created a trust for the testatrix's son, the court stated (supra at 30-31): *106 If a gift be absolute, it requires language of a clear and decisive character to cut it down to a lesser estate. * * * * * * In the instant case, the language which is said to have an obligatory effect, was used in reference to the person of the devisee. It does not indicate that the property was to bear the burden of providing and caring for the son, as might be contended if there had been language to the effect that the property was given for the support and care of the son. The language is entirely consistent with the thought that the testatrix in expressing her "understanding" was simply revealing as a reason for the gift to her brother that she was confident he would see to it out of a sense of personal responsibility that the son was looked after and not be left without care and supervision. It was an expression of hope and confidence. * * * The language is too dubious to raise a trust by implication. * * * In interpreting the "with the understanding" language, the court relied upon Tillman v. Ogren,227 N.Y. 495, 125 N.E. 821 (1920), which is widely cited for the proposition that such language is precatory. As we read the cases, the *107 conclusion of the Delaware court concerning the precatory nature of the "with the understanding" language is in the mainstream of legal analysis. [4] Respondent's attempt to distinguish the case on the ground that it involved an action for specific performance joined in by the guardian for the son does not alter, in our view, thecourt's analysis of the clause or its conclusion that the language in question was precatory. *108 In Tillman v. Ogren,supra, Anna C. Erickson's will provided (125 N.E. at 821): Fourth. I give and bequeath to my beloved husband Lars Erickson all of the rest and remainder of my estate both real and personal to have and to hold the same to him, his heirs and assigns forever, with the understanding that at the decease of the said Lars Erickson all of the estate which he shall derive under this will which shall then remain by him undisposed of he shall give and turn over to my sister Amanda Tillman. Lars Erickson died but did not leave to Amanda Tillman any property he had received from his wife even though he still owned some of the real property at his death. Amanda Tillman sued, but the court held that the absolute gift to Lars was not cut down by the clause in Anna's will introduced by the words "with the understanding." Rejecting an argument that Lars was obligated by contract to leave the property to Amanda Tillman, the court stated (125 N.E. at 823): It cannot be disputed that at the time she made her will it was her wish and desire that her husband should give what remained fo such rest and residue of her *109 property undisposed of at the time of his death to her sister. Did she intend to do more than express such wish and desire? If she had intended to qualify and limit the gift to her husband to a life estate, with the right to use so much of the principal thereof as he should choose during his life, she should have provided in the will for such limitation in as plain and clear terms as she had used in giving him such rest and residue. * * * The court added (supraat824): The gift to Lars Erickson in this case was absolute. There is no gift therein to Amanda Tillman. Neither is there such clear and certain statement of intention shown by the will as to make Lars Erickson, through the acceptance of the devise and bequest to him, obligated as by contract to give any undisposed of part of the rest and residue of Anna C. Erickson's property to Amanda Tillman, nor to make such contractual obligation to a specific charge upon the gift to Lars Erickson. [5]
*110 Similarly, in In re Ford's Will,28 Misc.2d 394, 211 N.Y.S. 2d. 553, (N.Y. Surr. Ct. 1961), affd. 227 N.Y.S.2d 644 (1962), the testatrix's will in the first paragraph gave certain real estate and personal property to her daughter, Nellie, "the title of the real estate to vest in her at the death of my husband Patrick Ford or if he should again marry." Supra at 554. The fourth paragraph of the will provided (supra at 555): The above bequests of my real estate are made with the distinct understanding that my said daughters are not empowered to sell any part or parcel of it during their lives, but in case Nellie Ford should die first then her part as previously described is to be the property of Mary A. E. McGarry, and in case of both the aforenamed daughters dying then their shares shall go to my daughter, Emma Kate Baker, and at her death or the death of all of my said daughters, then I direct that said real estate be equally divided among my grandchildren. Patrick Ford subsequently remarried and later died so that title to the real estate vested in Nellie, the daughter referred to in the first paragraph of the will. The *111 question to be decided was the effect of the fourth paragraph of the will. After citing and quoting from Tillman v. Ogren,supra, the court stated (at 556): In the instant case, after the absolute devise to Nellie Ford (Cole) as provided for in paragraph "First," testatrix used the same language in paragraph numbered "Fourth" as used in the Tillman v. Ogren case, supra, namely, "with the distinct understanding" followed by restrictions and provisions relating to the same property. This language does not indicate to the Court an imperative or decisive intent on the part of testatrix to qualify or cut down the devise already made. The court held that Nellie Ford received the property in fee simple absolute under the first paragraph, and such devise was not limited by the fourth paragraph. In the light of these guiding principles, we think it clear that the "with the understanding" clause in decedent's will was precatory. This ambiguous clause was not sufficient under those precedents to reduce or qualify the absolute gift made by decedent to her husband under the first clause of ItemSecond. There is no evidence whatever of any *112 agreement or understanding between decedent and her husband with respect to his disposition of the property when she made her will. Neither is there disclosed by the will such a clear and certain statement of intention as to make her husband, through acceptance of the bequest to him, obligated as by contract to give to the daughter and granddaughters, either at his remarriage or his death, whichever event was referred to in Item Second, the property he had received from decedent. No doubt it was decedent's wish and desire when she signed her will that, should her husband remarry, he would bestow any property he had received from her upon the daughter and granddaughters rather than upon any new wife he might later marry.But she did not make that wish and desire a condition or proviso to the bequest to her husband. As we read the will, he was free to consume the entire estate, leaving nothing to bestow upon the daughter and granddaughters either at his possible remarriage or at his death, whichever event was referred to in Item Second. Nor did decedent provide in her will that, at her husband's remarriage, or at his death following his remarriage, the property he had received from *113 her would pass to the daughter and granddaughters. Had decedent wished to pass an interest in her estate to them, or to obligate her husband to do so, the words "with the understanding, that" would have been superfluous; a conditional bequest to the daughter and granddaughters would have been made without those words (although there would remain an issue as to whether the bequest was to arise at her husband's remarriage or at his death). We think that decedent, by using these otherwise unnecessary words, indicated that she was merely expressing the wish, hope, or expectation that, should her husband remarry, he would favor the natural objects of their bounty rather than a new wife to whom decedent bore no relationship. The provision was thus precatory and does not support denial of the marital deduction. Respondent urges us to construe the usually precatory words "with the understanding" as mandatory under the circumstances of the instant case because decedent's husband was not only a devisee, but was also the executor's of the will. He relies for support on a line of cases which hold that precatory words addressed to an executor rather than to a devisee or legatee *114 may be construed to be mandatory. See, e.g., In re Marti's Estate,132 Cal. 666, 61 P. 964, 965 (1900), where the court stated: While the desire of a testator for the disposition of his estate will be construed as a command when addressed to his executor, it will not when addressed to his legatee be construed as a limitation upon the estate or interest which he has given to him in absolute terms. * * * We think respondent's position in this regard is without merit. As we read decedent's will, the precatory language of Item Second is directed to her husband in his capacity as beneficiary, not as executor. Thus, we refrain from treating the clause "with the understanding" as anything but precatory. See Burton v. Irwin,212 Va. 104, 181 S.E.2d 624, 628 (1971); In re Kearns' Estate,36 Cal. App.2d 531, 225 P.2d 218, 221 (1950); and Newhall v. McGill,69 Ariz. 259, 212 P.2d 764, 768 (1949), in which precatory words addressed to persons who were both devisees and executors under the wills at issue were construed *115 as precatory rather than mandatory because such words were addressed to them in their capacity as devisees, not as executors. We have found no Delaware cases holding otherwise. Respondent relies heavily upon Gould v. Trenberth,61 R.I. 5, 199 A. 696 (1938), where the testatrix who wrote her will at about age 57 lived with a sister, then 80 years old and practically without means of supporting herself. The will provided (supra at 698): Second: All of the rest, residue and remainder of my estate of whatsoever name or nature, be the same real, personal or mixed or however otherwise described * * *, I give, bequeath and devise to my sister-in-law, Eleaet E. Taber Beaman, with the understanding that if my sister, Elizabeth P. Rees Gould, shall survive me that my said sister-in-law shall care for my said sister as long as she shall live. The court held that the clause, given its "natural and most reasonable construction" (supra at 700), imposed a charge on the real property for the care of the sister for the rest of her life. The court, pointing out that the word "shall" was used, reasoned (supra at 700) that "the interests which the testatrix *116 showed her intent to create would come into operation concurrently and not one after and cutting short the other." On this ground, the court distinguished Tillman v. Ogren,supra.
In the instant case, in contrast, as we have pointed out, the alleged "interests" of the daughter and granddaughters which respondent argues were created did not come into operation concurrently with the bequest to decedent's husband. In no event could the ambiguous "with the understanding" clause in decedent's will have any meaning unless and until decedent's husband remarries. It is true, as respondent argues, citing the Gould case, supra, that the "with the understanding" clause of Item Second is followed by the word "shall" and the word "shall" can be used to convey a directive. That word, like the word, "understanding," however, gains meaning from the context in which it is used and is frequently interpreted as indicating futurity rather than a directive. Cunningham v. Long,125 Me. 494, 135 A. 198, 201 (1926); see also National State Bank of Newark v. Stewart,135 N.J. Eq. 603, 39 A.2d 435, 437 (1944). *117 Indeed the provision in the case of In re Ford's Will,supra, which was found to be precatory, used the word "shall" in much the same way as does decedent's will. In the instant case,not only does the word "shall" appear in a clause introduced by the usually precatory words "with the understanding, that," but those words are followed by a provision--"whatever monies he has received from me shall be equally bestowed"--so ambiguous that it could hardly provide a basis for an implied trust or a meeting of the minds on the terms of a contract imposing an obligation on decedent's husband. Assuming that the word "monies" was intended to have the same meaning as "All the rest, residue and remainder of my Estate, whatsoever and wheresoever Situate," used in the first clause of Item Second (see fn. 3, supra), and not to "monies" he had received from decedent before the will was signed or to the cash that he received under the will, and assuming further that the "with the understanding" clause was mandatory, what would be its effect? Was the husband required to "bestow" the monies at his remarriage, or at his death following his remarriage? Because he would be required *118 to bestow "whatever monies he has received," was he required to keep and "bestow" the stocks and bonds he received or was he authorized to sell them as he thought best? If he was authorized to sell them, did the "give, devise, and bequeath" provision authorize him to use and consume the proceeds as he so desired?Because there is no point prior to decedent's husband's death at which it can be said that he will not remarry, all of these ambiguities in the will would place him at his peril in dealing with the estate. These ambiguities, we think, confirm that decedent did not intend to create a trust or to impose a contractual charge on her estate or to obligate her husband in any way. In view of the absolute terms of the "give, devise and bequeath" clause of Item Second and the ambiguities in the "with the understanding, that" clause, we think decedent's intention is served by interpreting the latter clause as a precatory one which does not cut down or qualify the absolute gift made by the first clause of Item Second. Thus, the interest created by decedent in favor of her husband is not a terminable one. Accordingly, petitioner is entitled to the marital deduction. *119 To reflect the foregoing, Decision will be entered for the petitioner.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
2. SEC. 2056. BEQUESTS, ETC., TO SURVIVING SPOUSE. (b) Limitation in the Case of Life Estate or Other Terminable Interest.-- (1) General rule.--Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest-- (A) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and (B) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse; * * * * * *↩
3. The disputed language, introduced by the words "with the understanding," refers to "monies" the husband "has received from" decedent. The estate tax return indicates that, at decedent's death, the estate included some cash but mostly stocks and bonds. The word "monies" is an ambiguous term. Compare In re Price's Will,169 Pa. 294, 32 A. 455, 456 (1895); In re Feist's Will,10 N.Y.S.2d 506, 508, 170 Misc. 497 (N.Y. Surr. Ct. 1939) (may mean cash only) with In re Bricker's Estate,335 Pa. 300, 6 A.2d 905, 907 (1939); In re Ingham's Estate,315 Pa. 293, 172 A. 662↩ (1934) (may include property of every description). The parties have treated the word "monies" in decedent's will as if the term were intended here to encompass all of the residue of decedent's estate. We accept that interpretation.
4. Both Lewis v. Novello,22 Del. Ch. 134, 194 A.29 (1937) and Tillman v. Ogren,227 N.Y. 495, 125 N.E. 821, 823 (1920), contain the following quotation from Camp v. Waring,25 Conn. 520, 529-530 (1859): The context here shows that the word "understanding," always a loose and ambiguous one, unless accompanied with some expression to show that it constituted a meeting of the minds of parties upon something respecting which they intended to be bound, was used, not to express anything which was the subject of an agreement or contract between the parties, but only that kind of expectation or confidence upon which parties are frequently willing to rely without requiring any binding stipulation.↩
5. In In re Parant's Will,38 Misc. 2d 933, 239 N.Y.S. 2d 151, 156, (N.Y. Surr. Ct. 1963), the court, commenting on In re Ford's Will,28 Misc. 2d 394, 211 N.Y.S.2d 553, (N.Y. Surr. Ct. 1961), affd. 227 N.Y.S.2d 644 (1962), said: The decision [in the Ford case] rested upon that in Tillman v. Ogren,227 N.Y. 495, 496, 125 N.E. 821↩, which is authority for the proposition that the words "with the understanding" are precatory only and do not import a contract already made or arising from an acceptance of the devise and do not serve to limit an absolute devise. * * *