ISABEL LEWIS, JENNIE STOCK and GEORGE WALTER SMITH, Committee of Frank G. Maguire, an Insane Person,

*vs.*

FRANK NOVELLO.

*New Castle, July 22, 1937.*

*C. Edward Duffy*, for complainants.

*Caleb R. Layton, III*, for defendant.

THE CHANCELLOR: This case raises the question of whether the complainants can convey to the defendant a good marketable fee simple title to the land which is the subject of the contract of sale between them.

The question of whether the complainants can convey such a title depends upon the proper construction to be given to the will of Margaret E. Maguire in that clause thereof wherein she provided as follows:

"To my brother, John Flinn, all my possessions, with the understanding that he will properly provide and care for my son, Frank G. Maguire, who is at this time a patient in a Government Asylum."

John Flinn died intestate on October 28, 1933, leaving Frank G. Maguire to survive him. The complainants are his two sisters and the guardian of his insane nephew, all of his heirs at law. They have contracted to sell to the de-

fendant a lot of land with the buildings thereon, which John Flinn received by devise under the above quoted provision of his sister's will.

The question is—was the estate which was devised to John Flinn given to him burdened with a trust to provide and care for the son of the testatrix?

That the estate was given to him in fee simple is undoubted. *Rev. Code* 1935, § 3707. If it was intended to be in trust for his nephew's life with remainder to the devisee absolutely, there is no express language indicating it. Such a trust, if it exists, is deducible only by implication from the expression "with the understanding that he will properly provide and care for my son."

If a gift be absolute, it requires language of a clear and decisive character to cut it down to a lesser estate. *James, Adm'r., v. James, et al.,* 16 *Del. Ch.* 34, 139 *A.* 787. That rule is applicable here, for the question amounts to this—is an estate in trust for the son's life cut out of the absolute gift to John Flinn?

When it is claimed that a gift which in its creation is bestowed in terms that are absolute, is nevertheless burdened with a trust because of the implication of other language appearing in the context, the courts have always declared that the implication must be clear that it was the intent of the testator that a trust should arise; and in England where greater liberality of interpretation in favor of the idea of a trust has prevailed than in this country, the courts have professed an adherence to this principle even though at times it appears a legitimate subject of interrogation to ask whether their decisions are not at variance with the principle.

The cases in which questions of this character have arisen are numerous. They are cases where gifts which are in the first instance outright in character are found in as-

sociation with further language expressive of the testator's desire, recommendation or confidence which is laid hold of to support the idea that that which is first couched in terms of absolute import was really meant to be superimposed with an obligation of trust. The English courts went far in deducting testamentary intent of an obligatory character from such additional expressions. In the *Matter of Pennock's Estate*, 20 *Pa.* 268, 59 *Am. Dec.* 718, Justice Lourie, speaking for the Supreme Court of Pennsylvania, pointed out in a learned and scholarly opinion the reasons why the English courts had gone the lengths they had in raising implied trusts out of what would otherwise seem to be mere precatory expressions, and convincingly demonstrated that the perversity of the English decisions in continuing to evolve implied trusts out of doubtful language, was due to the momentum of precedent after the reasons underlying it had ceased to exist. Already, he said, speaking in 1853, the rule was fading even in England. And in 1870, we find the Chancellor of this State saying in the case of *Bryan v. Milby*, 6 *Del. Ch.* 208, 264, 24 *A.* 333, 334, 13 *L. R. A.* 563, that "the tendency of modern decisions, however, is not to extend the rule or practice which, from words of doubtful meaning, deduces or implies a trust."

I turn now to examine the language found in the will in the present case to see if an intent to create a trust for the life of the son is manifestly implied therefrom. The only expression from which the implication of a trust can be deduced is the phrase—"with the understanding that he will properly provide and care for my son." What does the testatrix mean when she refers to an understanding? In *Tillman v. Ogren*, 227 *N. Y.* 495, 125 *N. E.* 821, there was a similar expression. In that case there was an absolute devise and bequest of a residue to the husband of the testatrix "with the understanding that at the decease of the said Lars Erickson (the husband) all of the estate which he shall derive under this will which shall then remain by

him undisposed of he shall give and turn over to my sister Amanda Tillman." The husband dying without having disposed of all the estate, the question was whether Amanda Tillman was entitled to recive what remained. The decision turned on the interpretation to be given to the phrase "with the understanding," etc., whether it was sufficiently clear and imperative in its nature as to reveal an intent that the language of aboslute gift should be limited and qualified thereby. The Court of Appeals decided that the word "understanding" could not be taken as importing a contract either already made between the testatrix and her husband, or one that arose from an acceptance by him of the gift. It quoted with approval from *Camp v. Waring*, 25 *Conn.* 520, where the following was said:

"The context here shows that the word 'understanding,' always a loose and ambiguous one, unless accompanied with some expression to show that it constituted a meeting of the minds of parties upon something respecting which they intended to be bound, was used, not to express anything which was the subject of an agreement or contract between the parties, but only that kind of expectation or confidence upon which parties are frequently willing to rely without requiring any binding stipulation."

There was no showing in the New York case, as there is none here, that an agreement or contract existed between the testatrix and the beneficiary, other than as might be implied from the phrase "with the understanding," etc., appearing in the will, and that phrase, in the judgment of the Court of Appeals, was not sufficient to show it. Nor, said the court, was it clear that the testatrix by the use of the phrase intended that her husband could not accept the gift to him without thereby becoming obligated as by contract to carry out the "understanding" which the testatrix expressed.

In the instant case, the language which is said to have an obligatory effect, was used in reference to the person of the devisee. It does not indicate that the property was to bear the burden of providing and caring for the son,

as might be contended if there had been language to the effect that the property was given for the support and care of the son. The language is entirely consistent with the thought that the testatrix in expressing her "understanding" was simply revealing as a reason for the gift to her brother that she was confident he would see to it out of a sense of personal responsibility that the son was looked after and not be left without care and supervision. It was an expression of hope and confidence. It is far from clear that the testatrix intended by her language to impress the property with a trust. The language is too dubious to raise a trust by implication. The guardian for the son by joining in the contract of sale and becoming a party complainant in this suit, takes this view of the case.

The decree should be for the complainants.