WILMINGTON TRUST COMPANY, a corporation of the State of Delaware and TILGHMAN JOHNSTON, Trustees under the Last Will and Testament of REBECCA T. CANBY, deceased,

vs.

JAMES LEE PRYOR.

*New Castle, April 21, 1942.*

*Charles F. Richards,* for complainants.

*Howard A. Miller,* for defendant.

THE CHANCELLOR: The complainants, as trustees, seek to compel the defendant to comply with his contract to purchase certain real estate in the City of Wilmington. The question raised by the demurrer is whether "a good and marketable, fee simple title" can be conveyed by the complainants in accordance with their contract.

Rebecca T. Canby, late of the City of Wilmington, bequeathed and devised the residue of her estate to the Wilmington Trust Company and Tilghman Johnston, the complainants, in trust. She expressly authorized them

" * * * To grant, bargain, sell and dispose of all, or any part of the real estate which I may own or in any way be interested, and for that purpose I hereby authorize the said Trustees to execute any and all necessary deeds in fee simple, to the purchaser or purchasers of said real estate, clear of all Trusts, * * *; upon any such sale being made, I authorize the said Trustee to invest the monies, so received, and treat the same as part of the said Trust Estate * * *."

This provision is in terms absolute and unconditional, and applies to "all or any part of the real estate" which the testatrix owned, or in which she might be in any way interested. Moreover, any sale made is to be "clear of all Trusts."

In a subsequent paragraph of the same item of her will, Mrs. Canby directed her trustees:

"To pay over to my daughter, Jane T. Canby, and to expend for her benefit the sum of Fifteen Hundred ($1500.00) Dollars per annum, the same to be used in providing a home and maintenance for her during her life time; and should it become necessary during her life time to expend a larger sum than the said Fifteen Hundred ($1500.00) Dollars per annum, in order to give my said daughter perfect comfort and

care, then I authorize and empower my said Trustees to expend and pay out such additional sum or sums * * *."

The same item also ·contains the further provisions:

(1) "I desire the said Trustees to allow the use of my household goods, pictures, etc. to my daughter, Jane T. Canby, during her lifetime."

(2) "I desire the said Trustees to allow my daughter, Jane T. Canby, the use and occcupation of my residence * * * for a home, free of any charge for rent or taxes or charges of any kind, as long as she may desire to live there; * * *."

The only real estate which the testatrix owned at the time of her death on June 26th, 1925, and at the time of the execution of her will on May 22nd, 1924, was her residence in the City of Wilmington and an undivided interest in three small houses in the City of Philadelphia, Pennsylvania.

At her death, her residence was valued for tax purposes at $15,000; her interest in the Philadelphia properties was likewise valued at $500.00. By contract entered into on the Eighteenth day of November, 1941, the complainants agreed to sell, and the defendant agreed to purchase, the late residence of Mrs. Canby for $7500.00.

On September 7th, 1941, pursuant to the certificate of two physicians, Jane T. Canby was committed to the State Hospital at Farnhurst, for lunacy, and is still there under treatment for that disease. On December 19th, 1941, a trustee was appointed for her by this court. It appeared from an affidavit filed in that proceeding by the physician in charge of the State Hospital that Jane T. Canby was then suffering from a form of insanity known as epileptic psychosis. The complainants also allege on information and belief that she is incurable. The trustee appointed by this court has not been authorized to sell any right or interest that Jane T. Canby may have in the property covered by the contract of sale, and is not a party to this proceeding. The defendant claims that notwithstanding the absolute and unconditional power of sale given the trustees, Jane T.

Canby has either an equitable estate for life, or some lesser possessory right, in the property which he has agreed to purchase; and that the complainants as trustees under the will of Rebecca T. Canby, therefore, cannot convey "a good marketable, fee simple title" thereto, in accordance with their contract. His theory is that the language "I desire the said Trustees to allow my daughter * * * the use and occupation of my residence * * * as long as she may desire to live there; * * *" is used in a dispositive and testamentary sense, and that the trustees are bound thereby. I am unable to agree with that contention. As I view it, Rebecca T. Canby merely expressed a wish that her trustees "allow" her daughter "the use and occupation" of her residence "as long as she may desire to live there." Nothing more than a mere request or wish, binding no one, seems to have been intended. The use of the permissive, and frequently discretionary word "allow" (3 C.J.S., Allow, p. 888), in connection with the words "I desire" seems to corroborate this conclusion. Moreover, it is apparent that the word "desire" in the latter part of the sentence, is used in the sense of "wish." In the absence of other explanatory language, the natural inference, therefore, is that that word has the same meaning throughout the sentence. *State v. Highfield,* 4 *W. W. Harr.* (*34 Del.*) 272, 152 *A.* 45; *Silvia v. Scotten,* 2 *W. W. Harr.* (*32 Del.*) 295, 122 *A.* 513. The language of the preceding paragraph, with respect to the household goods of the testatrix, is wholly consistent with this conclusion. The same words "I desire" and "allow" also appear to be used in the sense of a hope or a request.

The fact that the trustees are requested to permit Jane T. Canby to use them "during her lifetime" is not a distinguishing feature. In either case, if the testatrix had intended her to have definite rights, she would have expressed that intent in clear and unequivocal language. The word "desire" was used in other provisions of the will, but when mandatory directions were intended, other and more em-

phatic words accompanied it. In the third item, the testatrix stated: "I expressly desire that the said Trustees shall not be held personally accountable for any diminution or loss in the investments of the funds committed to their charge or which they shall make." The fourth item is equally emphatic, as to her intent: "It being my desire and intention that there shall always be some person, preferably a relative, to act as co-trustee, I hereby desire and direct in case of the death of my brother, Tilghman Johnston," etc.

The complainants correctly point out that the modern cases do not favor the creation of trusts by implication from the use of words indicating a hope, a wish, or a request, with respect to the ultimate disposition of property devised or bequeathed in absolute terms. *Bryan v. Milby*, 6 *Del. Ch.* 208, 24 *A.* 333, 13 *L. R. A.* 563; *Scott on Trusts*, 25.2. Under the modern rule, when such words are used, the question is did the testator not only desire that the legatee, or devisee, make a particular disposition of the property, but did he also intend to impose a definite and binding obligation upon him? *Scott on Trusts*, 25.2; 1 *Bogert on Trusts & Trustees*, § 48, *p.* 224. This case, however, presents a somewhat different question. It is conceded that the complainants, as trustees, have title to the property agreed to be sold. No question with respect to the creation of a trust is, therefore, involved. That property composes a part of the assets of the trust estate, and the question is whether Jane T. Canby has certain rights therein which they are bound to recognize in administering the trust. If such rights exist, it is at least tacitly conceded that the complainants cannot comply with their contract of sale. When words in the form of a request or a wish with respect to the disposition of property are addressed to an executor, in the absence of something to indicate a contrary intent, they are frequently, and perhaps usually, regarded as imperative and dispositive. *Downs v. Casperson*, 20 *Del. Ch.* 119, 171 *A.* 753; *In re Hand's Estate*, 315 *Pa.* 238, 172 *A.* 666; *In re Tooley's Estate*, 170 *Cal.* 164,

149 *P.* 574, *Ann. Cas.* 1917*B*, 516; *Page on Wills,* (*2nd Ed.*), § 1041. Applying somewhat the same principles, in the absence of a contrary intent, when the administration, and not the creation, of a trust is involved, words are frequently imperative in meaning, though not in form. *Hawkins on Wills,* (*2nd Ed.*) 159, *note;* 49 *A. L. R.* 31; see, also, *Van Duyne v. Van Duyne,* 14 *N. J. Eq.* 397, 1 *McCart.* 397.

But the context of the will of Rebecca T. Canby will not permit the application of that general rule. The power of sale is expressly given in broad and comprehensive language, and does not except the home property for any period of time, whatever, during the lifetime of Jane T. Canby. Viewing the defendant's claim from the most favorable aspect, the subsequent provision in controversy is couched in much less explicit language, and does not purport to modify the powers previously given. See *Downs v. Casperson, supra.* Moreover, any sale made was "to be clear of all Trusts". Neither *Culver v. Elliott,* 1 *Terry* (40 *Del.*) 578, 15 *A.* 2*d* 423, nor *Bradford v. Culbreth,* 1 Terry (40 Del.) 373, 10 *A.* 2*d* 534, is inconsistent with this conclusion. In the latter case, the property in controversy was expressly given to Lucinda Hall Bradford "as long as she remains single or desires to remain in it." That is not our case.

The demurrer is overruled, and an order will be entered accordingly.