EQUITABLE TRUST COMPANY, a corporation of the State of Delaware, Executor of the Last Will and Testament of Helen Rogers Bradford, deceased,

*vs.*

DELAWARE TRUST COMPANY, a corporation of the State of Delaware, Trustee under the Will of Annie Rogers duPont, deceased, et al.

*New Castle, October 1, 1948.*

*James R. Morford,* of the firm of Marvel & Morford, for Equitable Trust Company, the complainant executor.

*C. Stewart Lynch,* of the firm of Lynch & Herrmann (Florence E. Freeman of counsel), for the Academy of the Visitation.

*Alexander L. Nichols,* of the firm of Morris, Steel, Nichols & Arsht, for The Trustees of the Protestant Episcopal Church of the Diocese of Delaware and The Vestrymen and Church Wardens of the Swedes Lutheran Church, called Trinity Church, in the Borough of Wilmington.

*David F. Anderson,* of Southerland, Berl & Potter, for William duPont, Jr. and Marion duPont Scott.

*Thomas Cooch,* for Equitable Trust Company, Trustee.

*William Prickett,* for Flora Cameron Zinn.

*William Marvel,* for The Delaware Society for the Preservation of Antiquities and the Estate of Mary Wilson Thompson.

HARRINGTON, Chancellor: Equitable Trust Company, the executor of the last will and testament of Helen Rogers Bradford, deceased, seeks instructions with respect to the questions raised by the complainant's bill which were not determined by the order of this court entered September 24, 1947, *ante p.* 118, 54 *A.* 2d 733.

The decedent's will, dated March 14, 1941, provides in part:

"Item IV. In exercise of the power of appointment granted to me under the last Will and Testament of my father, Theodore Rogers, I give and devise all of the interest over which I have such power of appointment in the house and tract of land known as 'Dunleith' in New Castle County, Delaware, together with the other buildings thereon erected, as well as such interest in the lots lying between the Hare's Corner Road and the Old Ferry Road and abutting the Northerly side of the Wilmington and New Castle Road as described in an agreement dated the 6th day of February, A. D. 1934 executed by the Delaware Trust Co., trustee and Shapdale, Inc. referred to hereinafter, and all paintings of a religious nature and all rugs and carpets now in the mansion house of 'Dunleith' and all other personal property located upon and used in or about 'Dunleith' over which I have such power of appointment and located without said mansion house, to the Academy of the Visitation of Wilmington, Delaware, a corporation of the State of Delaware. Said tracts of land herein devised include 'Dunleith' originally comprising about ninety acres of land as well as the other parcels lying between the Hare's Corner Road and the Old Ferry Road, and abutting the Northerly side of the Wilmington and New Castle Road, said parcels being more fully described in a certain Deed dated August 11, 1887 and recorded in the Office for the Recording of Deeds in and for New Castle County, etc. in Deed Record B, Volume 14, page 118. I also order and direct that my Executor as soon as convenient after my death and within six months thereafter, exercise the exclusive right and option of purchasing all the right, title and interest owned by Delaware Trust Company, Trustee, and Shapdale, Inc., in said house and tract of land known as 'Dunleith' together with the other buildings thereon erected as well as the furniture, fixtures and personal property located in and used about and in connection with said house and buildings, and in all those certain pieces or parcels of land lying between the highways known as Hare's Corner Road and the Old Ferry Road and abutting the Northerly side of the Wilmington and New Castle Road above mentioned, said purchase to be made pursuant to the terms of an agreement of option dated the 6th day of February, A. D. 1934, executed by Delaware Trust Company, Trustee as aforesaid and Shapdale, Inc., reference thereunto being hereby made. I further order and direct that my executor carry out all the terms of said option agreement and that on the completion of the purchase therein provided for, and herein directed, that my executor convey all right, title and interest to the real property so acquired from Delaware Trust Company, Trustee, and Shapdale, Inc., to The Academy of the Visitation of Wilmington, Delaware. I also direct my Executor to convey all right, title and interest to all painting of a religious nature and all rugs and carpets in the mansion house at 'Dunleith' as well as all other personal property used in or about 'Dunleith' and located without said

mansion house acquired from Delaware Trust Company, Trustee, and Shapdale, Inc., to the Academy of the Visitation of Wilmington, Delaware, as aforesaid. I also give and bequeath to said Academy of the Visitation of Wilmington, Delaware, all other personal property of every character located at 'Dunleith' and without said mansion house, which I may own at my death, excepting only my automobile. It is my earnest wish and request that the Academy of the Visitation of Wilmington, Delaware, as aforesaid, occupy and use the mansion house at 'Dunleith' and that if a chapel shall be built and maintained at the premises, it shall be dedicated to the Blessed Mother in memory of my mother, Mary N. Rogers. It is also my wish and desire that all domestic animals of every nature at Dunleith remain on said property, that they be cared for by the devisee of said property until such time as each of said animals shall die from natural causes.

"Item V. Whereas, by the terms of a deed of trust dated the 31st day of January, A. D. 1899, and recorded in the office for the Recording of Deeds in and for New Castle County, Delaware, in Deed Record W. Volume 17, page 28, entered into between Edward Bedwell of New Castle County and State of Delaware, and my mother, Mary N. Rogers, Trustee, all that piece or parcel of land designated as No. 10 in said deed containing approximately thirteen and one quarter acres, known as the Hannah Moore property, and on which is situate the Jacquette house, was granted and conveyed unto my mother, the said Mary N. Rogers, in trust for my sole and separate use for and during my natural life and upon the further trust that the said Trustee should grant and convey the aforesaid lot of land and buildings unto such person or persons as I shall direct by my last Will and Testament; and, Whereas St. Georges Trust Company, a corporation of the State of Delaware, is successor Trustee under said trust. NOW, Therefore, in exercise of said power of appointment, I direct that the said Hannah Moore property on which the Jacquette house is situate comprising about thirteen and one quarter acres, be conveyed to the Historical Society of Delaware, a corporation of the State of Delaware, by said St. Georges Trust Company Trustee, or its successor trustee subject, however, to the terms and conditions of a certain lease entered into on the 21st day of January, A. D. 1940, between St. Georges Trust Company, Trustee and Kent Cottages, Inc., a corporation of the State of Delaware, and recorded * * *. In exercising the power of appointment granted to me under the Will of my father, Theodore Rogers, I give and bequeath the collection of antique furniture now at 'Dunleith' aforesaid, to The Historical Society of Delaware, a corporation of the State of Delaware, and I also direct my Executor to convey all interest in said collection acquired from Delaware Trust Company, Trustee, and Shapdale, Inc., to said The Historical Society of Delaware. I also give and bequeath to the said Historical Society of Delaware all my right, title

and interest in and to said collection of antique furniture or any part thereof granted to me by the last Will and Testament of my mother, Mary N. Rogers, and any such antique furniture otherwise acquired and owned by me. For the purposes of keeping said collection in proper repair and for the purposes of displaying the same, I give and bequeath the sum of $50,000.00 to said The Historical Society of Delaware. I direct that this sum be used in whole or in part to erect a building or an addition to an existing building or to remodel, repair or restore an existing building, so that the furniture may be properly displayed. The above collection is bequeathed in memory of my mother, Mary N. Rogers, and, when displayed shall be so designated. If The Historical Society of Delaware does not accept the above bequest of furniture, I give and bequeath the furniture and all my right, title and interest therein, and said sum of $50,000.00 to the Wilmington Society of the Fine Arts, a corporation of the State of Delaware, under the same terms and conditions.

\* \* \* \* \* \* \*

"Item VII. I order and direct my Executor to pay from my personal estate all of the just obligations incurred in the pledging of my jewelry, and that my Executor repossess the same on the payment of the obligations due thereon. I give and bequeath said jewelry to my niece, Marion duPont Scott, and to my nephew's widow, Flora Cameron Zinn, or to the survivor of them, share and share alike. I also give and bequeath to said Marion duPont Scott and Flora Cameron Zinn, and to the survivor of them share and share alike, all silver, china, crystal, bric-a-brac, automobiles and all other personal property at 'Dunleith' or elsewhere, excluding the personal property given and bequeathed in earlier items of this my last Will and Testament. In the event both Marion duPont Scott and Flora Cameron Zinn both survive me and are unable to agree upon a fair division of the personal property hereby bequeath or any part thereto, my Executor shall have power of sale with respect thereto and upon such sale being made shall divide the proceeds so as to equalize the bequests at a proper valuation thereof."

Item VIII in part provides for the appointment of 1301 Market Street, Wilmington, to Equitable Trust Company, Trustee, pursuant to a general testamentary power of appointment given Helen Rogers Bradford by a deed to her mother, Mary N. Rogers, in trust for the benefit of the said Helen Rogers Bradford during her lifetime. Under the terms of the trust created by Item VIII, the property can be sold and the proceeds invested, and the income there-

from, or from the proceeds of its sale, is payable to certain named persons and to the survivor of them for life. At the death of the survivor, the trust *res* is to be transferred to the Trustees of the Protestant Episcopal Church of the Diocese of Delaware, a corporation of the State, in trust "to pay the income thereof * * * to the proper officers of Holy Trinity Old Swedes for the work of said church as memorials to my mother, Mary N. Rogers, and my son, Thomas B. Bradford."

"Item IX. All other real estate of which I die seized and all other real estate over which I have any power of appointment, I give and devise unto my nephew, William duPont, Jr. and my niece, Marion duPont Scott, their heirs and assigns, forever, as tenants in common. The exercise of powers of appointment vested in me with respect to a certain parcel of land designated as No. 9 in Deed of August 11, 1887 referred to in Item IV hereof is subject to the terms of a lease entered into on the 14th day of January, A. D. 1940 between Equitable Trust Company, Trustee, and Kent Cottages, Inc., a corporation of the State of Delaware, and recorded in the Office for the Recording of Deeds in and for New Castle County in Deed Record H, Volume 42, page 170.

"Item X. I order and direct that all indebtedness by way of mortgage obligations, taxes, or otherwise to which any real estate devised or appointed under this my last Will and Testament shall be subject at the time of my death, be paid from my personal estate so that said real estate shall pass to the devisees named herein, free and clear of all incumbrances.

* * * * * *

"Item XII. All the rest, residue and remainder of my estate, whether real, personal or mixed and which I may now own or hereafter acquire, and all other property of any character with respect to which I may have a power of appointment at the time of my death, I give, devise and bequeath to Equitable Trust Company, a corporation of the State of Delaware, in trust for the same uses and purposes stated in Item VIII hereof. The trust created by this Item of my Will and the trust created by Item VIII hereof shall constitute a single trust, shall be administered as such, and the powers of the Trustee shall be as stated in said item VIII. The income derived from said trust so constituted shall be paid to the persons named in said Item VIII and the survivors of them, share and share alike, and after the death of the last survivor, shall be subject to the further trusts therein expressed for the benefit of Holy Trinity Old Swedes aforesaid.

"Item XIII. Wherever in this my last Will and Testament I have made gifts or bequests of money, or have directed the payment of obligations or debts, or have directed the payment of incumbrances upon real estate, and, to the extent that moneys shall be needed to pay the proper fees and expenses in connection with the administration of my estate and to pay any taxes due any governmental body, the same shall be payable from the estate created by virtue of the exercise by me of the power of appointment contained in the last Will and Testament of my father, Theodore Rogers, and the term 'estate' or 'personal estate' where used in this will shall be referable to the estate so created and constituted. All gifts, devises, bequests and directions herein contained shall, to the extent necessary to give effect to this my last Will and Testament, be construed as the exercise by me of any and all powers of appointment which may be vested in me at the time of my death."

But a codicil to the will of Helen Rogers Bradford dated April 24, 1942, provides in part:

"Second—I do hereby amend and modify Item V of my said last will and testament by revoking, cancelling and annuling all of the last two grammatical paragraphs of said item, as contained on page 7 of my said last will and testament by substituting in lieu thereof the following, to be a part of said Item V of my said last will and testament:

"In the exercise of the power of appointment granted to me under the will of my father, Theodore Rogers, I give and bequeath the collection of antique furniture now at 'Dunleith' aforesaid, to the Academy of the Visitation of Wilmington, Delaware, a corporation of the State of Delaware, and I also direct my executor to convey all interest in said collection acquired from Delaware Trust Company, Trustee, and Shapdale, Inc. to the said Academy of the Visitation of Wilmington, Delaware, a corporation as aforesaid. I also give and bequeath to the said Academy of the Visitation of Wilmington, Delaware, all of my right, title and interest in and to said collection of antique furniture, or any part thereof, granted to me by the last will and testament of my mother, Mary N. Rogers, and any such antique furniture otherwise acquired and owned by me.

"It is my will 'and I direct that the collection of antique furniture herein bequeathed to the Academy of the Visitation of Wilmington, Delaware, a corporation as aforesaid, shall remain and be kept at and upon the premises known as 'Dunleith' aforesaid and in the mansion house upon said premises. For the purpose of keeping said collection of antique furniture in a proper state of restoration and repair, for the purpose of properly displaying the same, and for the purpose of remodeling, repairing or restoring the said mansion house on said

premises in order that said collection of antique furniture may be properly housed and displayed, but for no other purposes, I give and bequeath the sum of Twenty-five Thousand Dollars ($25,000.00) to the said Academy of the Visitation * * *. The above collection is bequeathed in memory of my mother, Mary N. Rogers, and when displayed and exhibited shall be so designated.

"If the said Academy of the Visitation * * * shall not accept the above bequest of said collection of antique furniture and of said sum of money, subject to the terms and conditions above contained, or if the gifts, devises and bequests contained in Item IV hereof to the said Academy of the Visitation * * * shall not be accepted by the said Academy of the Visitation * * *, or shall otherwise lapse or fail, said bequest, both of the collection of antique furniture and of the said sum of Twenty-five Thousand Dollars ($25,000.00) above mentioned, as well as the gifts, devises and bequests contained in Item IV hereof the said house and tract of land known as 'Dunleith' and other buildings thereon, the said lots lying between Hare's Corner Road and the Old Ferry Road, the paintings of a religious nature, the rugs and carpets now in the mansion house of 'Dunleith', and the other personal property located upon and used in or about 'Dunleith' over which I have power of appointment and located without said mansion house, shall lapse and become null, void and of no effect, and in that event I give, devise and bequeath and so exercise my power of appointment residing in me at the time of my death so as to give, devise and bequeath said house and tract of land, known as 'Dunleith', together with the other buildings thereon erected, said lots lying between Hare's Corner Road and the Old Ferry Road, said paintings of a religious nature, said rugs and carpets now in the mansion house of 'Dunleith' and all other personal property located upon or used in or about 'Dunleith,' over which I have such power of appointment, and located without said mansion house (as said land, buildings and personal property are more particularly described and referred to in Item IV of my last will and testament), and also said collection of antique furniture above referred to and said bequest of Twenty-five Thousand Dollars ($25,000.00), subject to all the terms and conditions above mentioned, to my niece Marion duPont Scott and to my nephew's widow, Flora Cameron Zinn, and to the survivor of them and to their successors, constituted as hereinafter set forth, in perpetual trust, nevertheless, for the following uses and purposes: * * *."

The terms and conditions of that trust are then stated in some detail, but it seems unnecessary to set them out.

"Third—I do hereby amend and modify Item IV of my said last will and testament by adding at the end of said Item IV * * * the following sentence: 'In the event said Academy of the Visitation of

Wilmington, Delaware, a corporation as aforesaid, shall decline or refuse to accept the gifts and bequests of my collection of antique furniture and of the sum of Twenty-five Thousand Dollars ($25,000.00), contained in Item V hereof (Item Second of this codicil) under and subject to the terms and conditions to which said gifts and bequests are expressly subject, the foregoing gifts, devises and bequests shall lapse and become null, void and of no effect and all property, the subject of this Item of my said last will and testament shall, in that event, pass in pursuance of the gifts, devises and bequests contained in said Item V as amended by Item Second of this my codicil.

"Fourth—I do hereby further amend and modify Item V of my said last will and testament by striking out the words: 'Historical Society of Delaware, a Corporation of the State of Delaware' wherever the same appears in said Item and by substituting in lieu thereof: 'The Delaware Society for the Preservation of Antiquities, a corporation of the State of Delaware' it being my wish and desire that the said Hannah Moore property on which the Jacquette House is situated and comprising about thirteen and one-quarter (13¼) acres, be conveyed by the trustee thereof to the said The Delaware Society for the Preservation of Antiquities, a corporation as aforesaid.

\*   \*   \*   \*   \*   \*

"Sixth— \* \* \* I do further amend Item XIV of my last will and testament by adding thereto the following sentence: 'I direct that my executor, above named, shall pay all inheritance, estate, succession and transfer taxes out of my estate as defined in Item XIII hereof.''

The will of Theodore Rogers, father of Helen Rogers Bradford, gave her a general testamentary power of appointment over certain real and personal property of which she was the life beneficiary: (1) an undivided one-third interest in "Dunleith", the Rogers' family residence, in New Castle Hundred, New Castle County, and the fee simple title in severalty to lots 2, 4, 6, 9 and 11 described on the plot attached to the bill; (2) an undivided one-third interest in that part of the collection of antique furniture at "Dunleith" at the death of Helen Rogers Bradford which had belonged to Theodore Rogers during his lifetime; and (3) an undivided one-third interest in certain paintings of a religious nature which were also at "Dunleith" at the death of the testatrix. The remaining interests in "Dun-

leith" belonged to Delaware Trust Company, Trustee under the will of Annie Rogers duPont, deceased, and to Shapdale, Inc., a corporation of this State, and such remaining interests in "Dunleith", together with certain other lots described in the plot attached to the bill, were the subject of the option agreement of February 6, 1934, referred to in the will. The collection of antique furniture at "Dunleith" at the death of Helen Rogers Bradford also included certain pieces which she had collected during her lifetime, as well as an undivided interest in other pieces which had belonged to the estate of her mother, Mary N. Rogers, deceased.

Helen Rogers Bradford died July 4, 1944. The intangible personal property belonging to her in her own right, consisting of cash and securities, amounted to $5,307.42; and the final appraised value of the tangible personal property which she owned and that over which she had a general testamentary power of appointment under her father's will was $41,049.75. Practically all of that property was specifically bequeathed. Under the trust created by the will of Theodore Rogers, the testatrix also had the general testamentary power to appoint intangible personal property, which as of March 5, 1948 amounted to $253,364.98. That fund, however, suffered a loss in the sale or redemption of securities of $1920.35, so the approximate total sum applicable to debts, expenses and legacies was reduced to $256,752.05. Funeral and administration expenses, taxes and debts already paid amounted to $150,828.19. As of March 5, 1948, the total balance of intangible personal property in the hands of the executor, or that could be used and applied by it in settling the estate was, therefore, approximately $105,923.86.

The pecuniary bequests, not including the $25,000 gift to the Academy of the Visitation for specified purposes, amounted to $20,644.00; the validity of the gift to the Academy is one of the questions to be determined in this case. By instruments other than the will of Theodore Rogers,

Helen Rogers Bradford also had the general testamentary power to appoint: (1) No. 10 on the plot attached to the bill, consisting of about 13¼ acres of land, known as the Hannah Moore property, on which the Jacquette House is erected; (2) No. 1301 Market Street, Wilmington; and (3) No. 5 on the plot attached to the bill. By Item V of the will, as modified by Item Fourth of the codicil, No. 10, the Moore or Jacquette property, is appointed to the Delaware Society for the Preservation of Antiquities. No. 1301 Market Street is appointed by Item VIII of the will to Equitable Trust Company, Trustee, for the benefit of certain named persons, and the survivor of them, and ultimately for the benefit of Old Swedes Church. No. 5 is appointed to William duPont, Jr., and Marion duPont Scott, as tenants in common, under the general language of Item IX of the will, and Nos. 9 and 11, as to which, as previously stated, Helen Rogers Bradford had a general testamentary power of appointment under the will of Theodore Rogers, are likewise appointed to William duPont, Jr. and Marion duPont Scott, as tenants in common, under the general language of Item IX of the will.

Helen Rogers Bradford at the time of her death owned two parcels of real property—a tract of about five acres on the Old Ferry Road, in New Castle County, and a tract of approximately 23 acres, known as Lobdell Field, in the same hundred. She owned no other real property in her own right. The five acre tract and Lobdell Field are also devised under the general language of Item IX of her will to William duPont, Jr., and Marion duPont Scott as tenants in common.

At the time of Mrs. Bradford's death, the following real property was subject to mortgage liens which had been created by prior owners:

1. Nos. 5 and 10.

(a) By a first mortgage given by Edward Bedwell and held by Equitable Trust Company, Trustee for Helen

Rogers Bradford, to secure the principal debt of $7202.75. The interest which had accrued thereon to July 4, 1944 was $154.06;

(b) By a second mortgage given by Edward Bedwell, held by City National Bank of Philadelphia, successor trustee, to secure the principal debt of $7420.62. The interest which had accrued thereon to July 4, 1944 was $190.46.

2. No. 1301 Market Street, Wilmington;

By a mortgage of William duPont, Trustee, held by Equitable Trust Company, Banking Department, to secure the principal sum of $28,000. The interest which had accrued thereon to July 4, 1944 was $303.33.

3. Lobdell Field:

By a mortgage of Mary N. Rogers, held by Equitable Trust Company, Trustee for Helen Rogers Bradford under the will of Theodore Rogers, originally for $2000, but reduced to $362.45. The interest which had accrued thereon to July 4, 1944 was $3.63.

4. Old Ferry Road Tract:

By a mortgage of Ruth Martin held by Marion duPont Scott, the balance due thereon being $760. (Interest waived.)

The total sum due on these mortgages at the death of Helen Rogers Bradford was, therefore, $44,397.30. Approximately four years' interest has also accrued since that time. Pursuant to the authority given by Item VIII of the will, the Market Street property was sold by the trustee after the death of the testatrix and the $28,000 mortgage, constituting a lien thereon, was paid, with interest, from the proceeds of the sale.

The total sum on these mortgages at the death of the testatrix, together with the amount of the pecuniary legacies, not including the $25,000 gift to the Academy of the Visitation, was more than $64,500. The real property,

over which Helen Rogers Bradford had a testamentary power of appointment under the will of her father, had an approximate value of $39,090.00 and the intangible personal property had an approximate value of $7,477.67. The latter figure was included in the $41,049.75 above set out. The executor estimates that additional administration expenses will amount to $35,000. That estimate does not include the cost of this proceeding and the attorneys' fees incident to its prosecution.

The Academy of the Visitation has indicated its intent to accept any gifts to which it may be entitled under the decedent's will and the codicil thereto. By an order entered September 24, 1947 (*ante p.* 118, 54 *A.* 2d 733), this court held that the option agreement of February 6, 1934, referred to in the decedent's will, could not be enforced by her executor. The Academy claims, however, that it is entitled to all the interests in real and personal property appointed to it by the testatrix pursuant to the authority given by her father's will.

The questions on which instructions are sought by the complainant are:

(1) In view of the order of this court of September 24, 1947, what interest, if any, does the Academy of the Visitation take under Items IV and V of the will of the testatrix, as amended by Items Second and Third of the codicil thereto?

(2) If all of the gifts to the Academy fail because of its inability to comply with the conditions imposed by the testatrix, do the alternative gifts to Marion duPont Scott and Flora Cameron Zinn, in trust, likewise fail?

(3) Are the mortgages on the real property appointed or devised by the testatrix, and which she directs paid, to be regarded as debts or as pecuniary legacies?

(4) If the gifts of tangible personal property to the Academy of the Visitation, and alternatively to Marion

duPont Scott and Flora Cameron Zinn, in trust, fail, do they go to Mrs. Scott and Mrs. Zinn individually under Item VII of the will, or to Equitable Trust Company, Trustee under Item XII?

(5)   Under Items X and XII of the will and "Sixth" of the codicil, are pecuniary bequests, debts, encumbrances, taxes and expenses of administration payable only out of the appointive estate created by the will of Theodore Rogers, deceased?

(6)   What is the order of abatement among the several unpaid beneficiaries having valid claims under the will should abatement become necessary?

In determining these primary questions, some incidental questions must also be considered.

The testatrix, by Item IV of her will and in "the exercise of the power of appointment" vested in her by her father's will, gives to the Academy of the Visitation "all of the interest over which" she had "such power of appointment" in (1) "Dunleith", as well as "such interest" in the lots designated on the plot attached to the bill as 2, 4 and 6, as described in an agreement with Delaware Trust Company, Trustee, and Shapdale, Inc., dated February 6, 1934; and (2) "all paintings of a religious nature and all rugs and carpets now in the mansion house at 'Dunleith' and all other personal property located upon and used in or about 'Dunleith' over which I have such power of appointment and located without said mansion house."[1]

Those provisions are followed by the direction that within six months after the death of the testatrix, her executor shall exercise the option to purchase from Delaware Trust Company, Trustee, and Shapdale, Inc., pursuant to the agreement of February 6, 1934, "all of the

---

[1] The executor found the paintings of a religious nature at "Dunleith" but found no other property mentioned in that provision of the will.

right, title and interest owned by Delaware Trust Company, Trustee, and Shapdale, Inc." in (1) " 'Dunleith' * * * as well as the furniture, fixtures and personal property located in and used about and in connection with said house and buildings"; and (2) in the lots or parcels of land above mentioned. The testatrix then directs her executor, on the completion of the purchase, to convey to the Academy of the Visitation (1) "all right, title and interest to the real property so acquired"; (2) "all right, title and interest to all paintings of a religious nature and all rugs and carpets in the mansion house at 'Dunleith' ", acquired from Delaware Trust Company, Trustee, and Shapdale, Inc., and (3) all other personal property acquired from Delaware Trust Company, Trustee, and Shapdale, Inc., used in or about "Dunleith" and located without said mansion house.

The testatrix by Item V of her will also in "exercise of the power of appointment granted" to her under her father's will gives "the collection of antique furniture now at 'Dunleith' * * * to the Historical Society of Delaware." She then directs her executor to "convey all interest in said collection acquired from Delaware Trust Company, Trustee, and Shapdale, Inc." to that society. She also gives to the Historical Society all her right and interest in "said collection of antique furniture or any part thereof" acquired under the will of her mother, Mary N. Rogers, and "any such antique furniture acquired" and owned by her. For "the purpose of keeping said collection in proper repair and for the purpose of displaying the same," the testatrix gives $50,000 to the Historical Society of Delaware. She directs that that bequest "be used in whole or in part to erect a building or an addition to an existing building so that the furniture may be properly displayed." She then adds "the above collection is bequeathed in memory of my mother, Mary N. Rogers, and when displayed shall be so designated."

In Item IV, the testatrix states that it is her "earnest wish and request that the Academy * * * occupy and use

the mansion house at 'Dunleith' and that if a chapel shall be built and maintained at the premises, it shall be dedicated to the Blessed Mother in memory of my mother, Mary N. Rogers." It is unnecessary to determine whether this is anything more than a mere request, not intended to impose a legal obligation on the devisee. See *Industrial Trust Co. v. President and Fellows of Harvard College,* 69 *R.I.* 317, 33 *A.* 2d 167; *Montague, Trustee v. Punte, et al., ante p.* 322, 60 *A.* 2d 454; *Wilmington Trust Co. v. Pryor,* 26 *Del. Ch.* 191, 25 *A.* 2d 685; *Lewis v. Novello,* 22 *Del. Ch.* 134, 194 *A.* 29. In any event, by Item Second of the codicil, the testatrix gives very definite directions with respect to the use of both the gifts under Item IV of the will and the additional gifts under the codicil. By Item Second of the codicil, the testatrix gives and bequeaths the collection of antique furniture at "Dunleith" to the Academy of the Visitation instead of to the Historical Society of Delaware, as originally provided in Item V. In the same Item of the codicil, in addition to the interest appointed pursuant to the authority given by her father's will, she directs her executor "to convey all interest in said collection acquired from Delaware Trust Company, Trustee, and Shapdale, Inc. to the Academy of the Visitation." She also gives and bequeaths to the Academy all her right, title and interest in said collection of antique furniture, or any part thereof, given her by the last will and testament of her mother, Mary N. Rogers, deceased, and any such antique furniture otherwise acquired and owned by her. Then she directs that the entire collection so bequeathed to the Academy "shall remain and be kept at and upon the premises known as 'Dunleith' aforesaid and in the mansion house upon said premises." The original gift of the antique furniture to the Historical Society in Item V was to have been housed and exhibited elsewhere. The same item of the codicil contains the following additional provisions: (a) a bequest of $25,000 to the Academy of the Visitation "for the purpose of keeping said collection of antique furniture in a proper state of restoration and repair, for the purpose of properly

displaying the same, and for the purpose of remodeling, repairing or restoring the said mansion house on said premises (Dunleith) in order that said collection of antique furniture may be properly housed and displayed, but for no other purposes"; and (b) "The above collection is bequeathed in memory of my mother, Mary N. Rogers, and when displayed and exhibited shall be so designated."

Item Second of the codicil further provides that if the Academy "shall not accept the above bequest of said collection of antique furniture and of said sum of money, subject to the terms and conditions above contained, or if the gifts, devises and bequests contained in Item IV hereof to the said Academy * * * shall not be accepted * * * or shall otherwise lapse or fail", then all of the gifts of both real and personal property under both Item IV of the will and Item Second of the codicil, including the gift of $25,-000, shall also fail. Finally, Item Third of the codicil amends Item IV of the will, so as to provide that if the Academy "shall decline or refuse to accept" the collection of antique furniture and the sum of $25,000 given by Item Second of the codicil "under and subject to the terms and conditions to which said gifts and bequests are expressly subject", all the foregoing gifts and devises shall lapse and become null and void and of no effect. In that event, all such property is to pass to Marion duPont Scott and Flora Cameron Zinn, in trust. Thus the testatrix provides that all gifts, devises and bequests to the Academy in Item IV of the will, as amended by Items Second and Third of the codicil, shall become null and void in either of two events: (1) if the property given shall not be accepted by the Academy under the terms and conditions imposed, and (2) if the gifts, devises and bequests contained in Item IV of the will shall "otherwise lapse or fail." The dominant intent of the testatrix in Item Second of the codicil is to create a memorial to her mother, consisting of an art center or museum for the public exhibition of the antique furniture and paintings of a religious nature, to be established

and housed in the family mansion house at "Dunleith". In this scheme, the Academy is merely the contemplated agency. But Helen Rogers Bradford intended entire, and not merely fractional interests in such property to pass under her will, and nothing less will satisfy the conditions imposed on their intended use. Because of the legal inability of the executor to enforce the option agreement, and thereby acquire the entire interest in "Dunleith", in lots 2, 4 and 6, in a part of the collection of antique furniture and in the paintings of a religious nature, the gift to the Academy, therefore, fails. Without considering the language used in Item Second of the codicil, it is evident that the alternative gift to Marion duPont Scott and Flora Cameron Zinn, in trust, for the same purpose and upon the same conditions, is likewise ineffective.

As we have seen, some of the real property which Helen Rogers Bradford owned and some over which she had a testamentary power of appointment under her father's will, or otherwise, were subject to mortgage liens which had been created by prior owners. The principal sum due on these mortgages at her death was $43,745.82 and the interest had not been fully paid to that time. By Item X of the will, she directs that

"* * * all indebtedness by way of mortgage obligations, taxes or otherwise to which any real estate devised or appointed * * * shall be subject at the time of my death be paid from my personal estate so that said real estate shall pass to the devisees named herein free and clear of all encumbrances."

Item XIII of the will also in part provides:

"All gifts, devises, bequests and directions herein contained shall, to the extent necessary to give effect to this my last will and testament, be construed as the exercise by me of any and all powers of appointment which may be vested in me at the time of my death."

Conceding that Helen Rogers Bradford was not personally liable on any of the mortgage liens on the real property appointed or devised by her, it is evident from Item X that she intended to assume their payment as debts of

her estate. The reference to "obligations or debts" in Item XIII corroborates this conclusion and any interest due and unpaid is necessarily a part of such obligations. Furthermore, the language used indicates that the mortgage liens are to be paid out of the decedent's personal estate, as defined by Item XIII of her will, like any other debts of that nature, and not as legacies. A testatrix may, of course, charge her real or personal estate with the payment of mortgage liens created by prior owners of her real estate, or on property subject to her appointment, by express language or by language indicating such an intent. *Duke* of *Cumberland v. Codrington*, 3 *Johns.Ch.* 229; *Andrews v. Bishop*, 5 *Allen (Mass.)* 490; see also *Equitable Trust Co. v. Shaw*, 22 *Del. Ch.* 47, 194 *A.* 24. Pursuant to a power given the trustee by Item VIII of her will, No. 1301 Market Street has been sold, and in order to give a clear title the $28,000 mortgage lien was paid out of the proceeds of the sale. The property was to pass to the trustee free and clear of that lien and it should, therefore, be reimbursed for the amount so paid, with interest to the date of payment.

*Section* 3837 *of the Revised Code of* 1935, *as amended by. Chapter* 191, § 4, *Volume* 41, *Laws of Delaware,* provides:

"Executors and administrators shall pay demands against the deceased in the following order: First: Funeral expenses; * * * Sixth: Judgments against the deceased, * * *; Seventh: Recognizances, mortgages and other obligations of record, for the payment of money; * * *."

*Section* 3839 *of the Revised Code of* 1935, *as amended by Chapter* 142, § 2, *Volume* 42, *Laws of Delaware,* also provides:

"An executor or administrator shall be deemed to have notice of judgments, decrees, recognizances and mortgages (but not of the bonds accompanying such mortgages) of record in any county of this State, unless there has been a failure to insert them in the index of the docket wherein they stand; except judgments and recognizances before a Justice of the Peace, of which he shall not be charged with notice, unless actual notice be given."

(5) The directions of the will bring the mortgages within the scope of these statutory provisions, and the failure of the mortgagees to file probated claims against the estate does not destroy the rights of the devisees of mortgaged property to have them paid by the decedent's executor in order that title may pass clear of liens. 4 *Page on Wills, (L.T.Ed.)* § 1486; *Turner v. Laird,* 68 *Conn.* 198, 35 *A.* 1124.

No part of the $760 mortgage on the Old Ferry Road tract, held by Marion duPont Scott, has merged in any greater interest now held by her in that property. The mortgage was assigned to her by the mortgagee during the lifetime of Helen Rogers Bradford and the property bound by it was subsequently devised to William duPont, Jr., and Marion duPont Scott absolutely, as tenants in common.

In this court, when the legal ownership of land and an encumbrance thereon become vested in the same person, whether the law of merger applies is a question of intention, actual or presumed, of the person in whom the interests united. 3 *Pomeroy Eq.Jur. (5th ed.),* §§ 791, 792; *Forbes v. Moffat,* 18 *Ves.* 384; *Clos v. Boppe,* 23 *N.J.Eq.* 270; 143 *A.L.R.* 109, *etc.* If there be no direct evidence of an actual intent that the charge shall be kept alive at the time the two interests vest in the same person, such an intent may be presumed if it appears from all the circumstances that it is for the best interest of the party. *Clos v. Boppe, supra;* 3 *Pom. Eq.Jur., supra,* § 791; 143 *A.L.R.* 109. Merger is not favored in equity and is never allowed unless for special reasons and to promote the intention of the party. See 4 *Kent.Com.* *p. 102. While there is no direct evidence with respect to the intent of Marion duPont Scott, it would be contrary to her interest for merger to apply, and the mortgage lien must be paid.

In the absence of something to indicate a contrary intent, void bequests and devises pass under the general residuary clause of a will. *Bruno v. Farmers Bank,* 29 *Del.*

*Ch.* 87, 46 *A.* 2d 549; *Lodge, Ex'r., v. Grubb, et al.,* 15 *Del. Ch.* 105, 132 *A.* 142. *Shockley v. Parvis,* 4 *Houst.* 568; *Page on Wills,* (*L.T.Ed.*) § 994; 69 *C.J. "Wills"*, 1077.

Item XII, the general residuary clause gives all of the residue of the decedent's estate, whether real or personal, and all other property of any character, with respect to which she had the power of appointment, to the Equitable Trust Company, Trustee, to be held and administered pursuant to the provisions of Item VIII. Item VII gives to Marion duPont Scott and Flora Cameron Zinn "all silver, china, crystal, bric-a-brac, automobiles and all other personal property at 'Dunleith' or elsewhere, excluding the personal property given and bequeathed in earlier items" of the will. Item IX gives to William duPont, Jr. and Marion duPont Scott "all other real estate of which I die seized and all other real estate which I have any power of appointment."

A will may sometimes contain both particular residuary clauses and a general residuary clause (*Moffett v. Elmendorf,* 152 *N.Y.* 475, 46 *N.E.* 845, 57 *Am. St.Rep.* 529; *Page on Wills, supra,* §§ 1000, 1002; see also *Downs v. Casperson,* 20 *Del.Ch.* 119, 171 *A.* 753) ; and one of the questions is whether Items VII and IX are particular residuary clauses or whether they merely provide for specific gifts. The reasonable conclusion is that Item VII refers only to tangible personal property (see *Equitable Trust Co. v. Clavey,* 26 *Del.Ch.* 55, 21 *A.* 2d 719) *affirmed on appeal* 26 *Del.Ch.* 446; and no one makes any different claim. The gift of the enumerated kinds of property in that Item may be specific, but the additional gift of "all other personal property at 'Dunleith' or elsewhere" is a residuary gift. It covers all tangible personal property belonging to the testatrix, as well as that over which she had a testamentary power of appointment, no matter where located. *DeTrafford v. Tempest,* 21 *Beav.* 564, 52 *Eng.Repr.* 978; see also *Mason v. Ogden* (1901) 1 *Ch.* 619, *aff'd by House of Lords* (1903) *App.Cas.* 1. Moreover, the phrase in Item VII "excluding

the personal property given and bequeathed in earlier items" of the will merely means personal property effectively given in such items. *DeTrafford v. Tempest, supra;* 69 *C.J.* 423.; see also *Moffett v. Elmendorf, supra; Mason v. Ogden, supra.* The exclusion is not of "property mentioned in earlier items," but is in quite different and more limited language. See *Mason v. Ogden, supra.*

The devise of "all other real estate" to William duPont, Jr., and Marion duPont Scott in Item IX is likewise a particular residuary devise and includes all real property not otherwise disposed of, as well as all interests in real property ineffectively given or appointed by other items of the will and codicil. *Mason v. Ogden, supra; Moffett v. Elmendorf, supra.*

Applying these principles, all tangible personal property belonging to the testatrix not otherwise disposed of, passed under Item VII to Marion duPont Scott and Flora Cameron Zinn, and not under the general residuary clause, to be administered pursuant to Item VIII. That gift includes (1) the antique furniture belonging to Helen Rogers Bradford at "Dunleith"; (2) her interest in the antique furniture which had belonged to her mother, Mary N. Rogers, deceased; (3) the interest in the antique furniture and paintings of a religious nature, over which she had a testamentary power of appointment under the will of her father, Theodore B. Rogers, deceased; and (4) all other tangible personal property belonging to her which she did not otherwise bequeath. The two tracts of land owned by the testatrix individually, the interest in "Dunleith" and lots 2, 4 and 6, which she had the power to appoint under her father's will likewise passed under Item IX to William duPont, Jr., and Marion duPont Scott. No. 5 also passed to the same persons under the same item, but the power to appoint it was not given by the will of Theodore B. Rogers.

The general residuary clause (Item XII) is, however, applicable to any other personal property, not of a tangible

nature, belonging to the testatrix and that over which she had a testamentary power of appointment, including the ineffective gift of $25,000, that may be left after the payment of debts, expenses, taxes and legacies.

Item XIII provides (1) that where the testatrix has "made gifts or bequests of money, or * * * directed the payment of obligations or debts, or * * * directed the payment of encumbrances upon real estate and to the extent that money shall be needed to pay the proper fees and expenses in connection with the administration" of her estate, and "to pay any taxes due any governmental body," (2) the same "shall be payable from the estate created by virtue of the exercise * * * of the power of appointment contained in the last will and testament" of her father, Theodore B. Rogers and (3) that "the term 'estate' or 'personal estate' where used in this will shall be referable to the estate so created and constituted." Item Sixth of the codicil also provides that the decedent's executor "shall pay all inheritance, estate, succession and transfer taxes out of my estate as defined in Item XIII * * *."

In the absence of some testamentary provision requiring the application of a different rule, the personal property of a decedent is the primary fund from which to pay administration expenses and debts and is the only fund from which to pay general pecuniary legacies. See *Security Trust Co. v. Cooling*, 28, *Del.Ch.* 303, 42 A.2d 784. From the language of the will, it seems obvious that the testatrix intended to make the estate, both real and personal, created by the exercise of the power of appointment under the will of Theodore B. Rogers, deceased, a part of her general estate and chargeable with the payment of general pecuniary legacies, as well as with expenses and debts. It is unnecessary to determine whether her own real property is also chargeable with the payment of legacies under any circumstances. The reasonable inference is that the appointive property was not intended to be the sole or even the primary source for the payment of

expenses, debts and legacies. The legacies, amounting to $20,644.00, are therefore of a general pecuniary nature and not demonstrative legacies payable from a particular fund. See *Rambo, Ex'r., v. Rumer*, 4 *Del. Ch.* 9. The facts seem to indicate that as the $25,000 gift to the Academy, and in the alternative to the Scott-Zinn trust, did not take effect, there will be sufficient funds to pay all expenses, debts and general pecuniary legacies. It therefore seems unnecessary to consider the possible question of abatement.

A decree will be entered in accordance with this opinion.